UNITED STATES of America,
Plaintiff-Appellant,

v.

SOUTHEAST MISSISSIPPI LIVESTOCK
FARMERS ASSOCIATION etc., et al.,
Defendants-Appellees.

UNITED STATES of America,
Plaintiff-Appellant,

v.

James A. RESTER et al., Defendants,

Pine Burr Packing Company, A Division
of Merchants Company, and Southeast
Mississippi Livestock Farmers Associa-
tion, Defendants-Appellees.

Nos. 78–3330, 79–2466
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 18, 1980.

Joseph E. Brown, Jr., Asst. U. S. Atty.,
Robert E. Hauberg, U. S. Atty., Jackson,
Miss., for plaintiff-appellant in both cases.

John B. Clark, Jackson, Miss., for defend-
ants-appellees in both cases.

L. A. Smith, III, Asst. U. S. Atty., Jack-
son, Miss., for plaintiff-appellant in No. 79–
2466.

Aultman, Pope, Aultman & Tyner, Bruce
C. Aultman, Hattiesburg, Miss., for the
Merchants Co.

Daniel, Coker, Horton, Bell & Dukes,
Jackson, Miss., for Southeast Livestock in
No. 79–2466.

Before HILL, GARZA and THOMAS A.
CLARK, Circuit Judges.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

PER CURIAM:

These cases are before us on appeal by the United States of America acting through the Farmers Home Administration (FmHA). On the Government's unopposed motion, these cases have been consolidated since they present a single issue: Are the descriptions of the collateral contained in the financing statements and security agreements legally sufficient to put the auction company, Southeast Mississippi Livestock Farmers Association ("Southeast Mississippi"), and the hogbuyer, the Merchants Company ("Merchants"), d/b/a Pine Burr Packing Company, on notice of the Government's security interest in swine allegedly "converted" by Southeast Mississippi and Merchants? In directing a verdict for Southeast Mississippi and Merchants in No. 78–3330 and granting summary judgment in favor of the same parties in No. 79–2466, the district court held that the descriptions of the collateral in the security agreements and financing statements were not legally sufficient to perfect the Government's security interest in the swine. We reverse and remand.

In the late 1960's and early 1970's Defendant James A. Rester (in No. 79–2466) and third-party defendant Kenneth R. Rester, Sr. (in No. 78–3330) financed their Mississippi hogfarming operations through a series of loans from the Farmers Home Administration. To secure the loans, security agreements and financing statements were executed by the parties, and the financing statements were filed in the debtors' county of residence.

Subsequently, from 1971 to 1973 the Resters separately engaged in a series of sales of their swine. Some of the sales were made directly to Merchants. Other sales were made through the auction facilities of Southeast Mississippi, which acted as the farmers' agent. In both cases, Southeast Mississippi and Merchants had no actual knowledge of the Government's security interest in the swine. Of the hogs sold, apparently none were the hogs listed on the security agreements. Rather, they were "increases" or "products" of the brood sows.

Each brood sow could produce between ten and twenty pigs each year, and pigs were marketed at about five and one-half months of age.

Upon default by the borrowers the FmHA instituted these proceedings alleging that all of the Resters' swine sold by Southeast Mississippi or bought directly by Merchants were covered by the security agreements, the security interests were perfected by the filing of valid financing statements, and the sales were made without the knowledge or consent of the FmHA.

On appeal, the FmHA contends that the security agreements and financing statements adequately described the farmers' swine which secured the Government's loans; the Government's security interests were perfected; and Southeast Mississippi and Merchants had constructive notice of the Government's security interests in the swine.

Both Southeast Mississippi and Merchants contend the district court was correct in holding that the descriptions of the collateral were inadequate, as a matter of law, to perfect the Government's security interest in the swine. Accordingly, they assert they were not on notice, in any form, of the security interest in the Resters' hogs when the sales occurred. In the alternative, Southeast Mississippi and Merchants contend that even if the descriptions of the collateral in the security agreements and financing statements were adequate, the FmHA is estopped from maintaining its actions in conversion because the Government waived its security interest in the swine.

■ In vacating and remanding the judgment of this court in a case which considered the sufficiency of the description of collateral in an FmHA financing statement filed in Georgia, the Supreme Court held that, absent a Congressional directive to the contrary, the federal courts should determine the sufficiency of the FmHA's lending program under nondiscriminatory state laws. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), vacating and remanding

*United States v. Crittenden*, 563 F.2d 678 (5th Cir. 1977). Therefore, to assess the legal sufficiency of the FmHA's security agreements and financing statements in the cases presently before us, we are obliged to apply Mississippi law to these proceedings.

At the outset, we note that Mississippi courts have not addressed the question of the sufficiency of the description of collateral in either security agreements or financing statements. Therefore, "[i]n the absence of controlling precedent, we must nonetheless decide this issue as we believe a Mississippi court would decide it." *Green v. Amerada-Hess Corp.*, 612 F.2d 212, 214 (5th Cir. 1980).

Mississippi enacted the Uniform Commercial Code on March 31, 1966, to become effective March 31, 1968. For this appeal, the relevant UCC sections are § 9–110 (sufficiency of description),[1] § 9–203 (formal requisites of security agreements),[2] and § 9–402 (formal requisites of financing statements).[3] The sufficiency of the descriptions of the collateral in the FmHA security agreements and financing state-

---

1. Miss.Code Ann. § 75–9–110 (1972) provides in pertinent part:

    For the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described . . . . .

2. Miss.Code Ann. § 75–9–203 (1972) (amended 1977) provided in pertinent part:

    (1) Subject to the provisions of Section 4–208 [§ 75–4–208] on the security interest of a collecting bank and Section 9–113 [§ 75–9–113] on a security interest arising under the chapter on Sales, a security interest is not enforceable against the debtor or third parties unless

    .    .    .    .    .

    (b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut, a description of the land concerned. In describing collateral, the word "proceeds" is sufficient without further description to cover proceeds of any character.

3. Miss.Code Ann. § 75–9–402 (1972) (amended 1977):

    (1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown, the statement must also contain a description of the real estate concerned. When the financing statement covers goods which are, are to, or thereafter become fixtures, the statement must also contain a legal description of the real estate concerned and the name of the record owner or record lessee thereof. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.

(2) A financing statement which otherwise complies with subsection (1) is sufficient although it is signed only by the secured party when it is filed to perfect a security interest in

(a) collateral already subject to a security interest in another jurisdiction when it is brought into this state. Such a financing statement must state that the collateral was brought into this state under such circumstances.

(b) proceeds under Section 9–306 [§ 75–9–306] if the security interest in the original collateral was perfected. Such a financing statement must describe the original collateral.

(3) A form substantially as follows is sufficient to comply with subsection (1):

Name of debtor (or assignor) _____
Address _____
Name of secured party (or assignee) _____
Address _____

1. This financing statement covers the following types (or items) of property: (Describe) _____

2. (If collateral is crops) The above-described crops are growing or are to be grown on: (Describe Real Estate) _____

3. (If collateral is goods which are, are to, or thereafter become fixtures) The above described goods are affixed or to be affixed to: (Describe real estate by legal description) Record owner (or record lessee) of said real estate _____

4. (If proceeds or products of collateral are claimed) Proceeds—Products of the collateral are also covered.

Signature of Debtor (or Assignor) _____
Signature of Secured Party (or Assignee)____

(4) The term "financing statement" as used in this chapter means the original financing statement and any amendments but if any amendment adds collateral, it is effective as to the added collateral only from the filing date of the amendment.

(5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

ments must be tested against the standards prescribed by these three provisions.

The security agreement in No. 79–2466 provided, in pertinent part:[4]

DEBTOR HEREBY GRANTS to Secured Party a security interest in his interest in the following collateral, including the proceeds and products thereof:

*Item 3.* All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following:

| Line No. | Quantity | Kind-sex | Breed | Color | Weight or average weight | Age or age range | Brands or other identification |
|---|---|---|---|---|---|---|---|
| | 1 | CALF | GRADE | BLACK | 125 # | 3 Mos. | |
| | 82 | SOWS | DUROC–YORKSHIRE | RED AND RED AND WHITE | 250–550 # | 1–4 | |
| | 4 | BOARS | YORKSHIRE | WHITE | 375 # | 1–4 | |
| | 152 | PIGS | DUROC–YORKSHIRE | WHITE, RED, AND RED AND WHITE | 25 # to 200 # | 3 Weeks to 5 Months | |
| | 244 | PIGS | DUROC-YORKSHIRE | WHITE, RED, AND RED AND WHITE | 100–to 200 # | 2 Mos. to 5 Mos. | |

In outlining the formal requisites for the enforceability of Mississippi security interests, the Mississippi UCC states in § 9–203(1) that:

[A] security interest is not enforceable against the debtor or third parties unless . . . (b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted, or timber to be cut, a description of the land concerned. In describing collateral, the word 'proceeds' is sufficient without further description to cover proceeds of any character.

Miss.Code Ann. § 75–9–203(1) (1972) (amended 1977).

Furthermore, for all secured transactions, § 9–110 provides that, "[A]ny description of personal property or real estate is sufficient whether or not it is specific *if it reasonably identifies what is described.* . . ." Miss.Code Ann. § 75–9–110 (1972) (emphasis added).

■ We hold that the description of the farmers' swine in the FmHA security agreement, to wit, "All livestock . . . now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto," reasonably identified the hogs either owned by the farmers at the time the loans were made or acquired thereafter, either by purchase, trade, procreation, or otherwise. *United States v. Pirnie,* 339 F.Supp. 702 (D.Neb.1972), *aff'd,* 472 F.2d 712 (8th Cir. 1973). Thus, the description of the collateral in the FmHA security agreement was

---

4. The security agreement in No. 78–3330 was similar in all respects and will not be set forth here.

sufficient under Miss.Code Ann. § 75–9–203(1) (1972) (amended 1977).

■ Southeast Mississippi and Merchants also challenge the sufficiency of the description of collateral in the financing statements which were filed, and properly so, in the farmers' county of residence, Pearl River County, Mississippi. The financing statement in No. 79–2466 included the following provisions:[5]

1. This Financing Statement covers the following types or items of collateral, including proceeds and products thereof:

(a) Crops, livestock, other farm products, farm and other equipment, supplies and inventory . . . .

2. Disposition of such collateral is not hereby authorized.

We find the trial court erred in holding that the description was inadequate to perfect the Government's security interest.

In describing the formal requisites of a financing statement under the UCC, § 9–402 provides in part:

(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, and contains a statement indicating the types, or describing the items, of collateral.

Miss.Code Ann. § 75–9–402(1) (1972) (amended 1977).

In subsection (3) of § 9–402, a form designed to comply with the requirements of subsection (1) is set forth.[6] The FmHA's financing statement substantially followed the form suggested by § 9–402(3).

Furthermore, Official Comment (2) to § 9–402 of the UCC states that a financing statement is intended to be a system of "notice filing" and nothing more:

What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.

Certainly, any reasonable party examining the financing statements describing the Resters' collateral would have been sufficiently alerted to direct an inquiry to the FmHA to determine what, if any, security interest in the livestock was held by the Government. We hold that the financing statements in these cases were sufficient under Miss.Code Ann. § 75–9–402 (1972) (amended 1977) to give notice to a buyer of secured property, in this case, livestock, that he should contact the secured party, here the FmHA, to inquire as to the extent of the security interest. *See, In re King-Porter Co.*, 446 F.2d 722 (5th Cir. 1971). Therefore, a perfected security interest existed in favor of the Farmers Home Administration in the swine sold by the Resters, and Southeast Mississippi and Merchants had constructive notice of the Government's security interest even though the description of collateral in the financing statements did not include the word "increases."

Although Mississippi courts have not addressed the specific issue of the sufficiency, under the UCC, of the description of livestock as collateral, our interpretation of the applicable Mississippi UCC provisions is in agreement with the general body of UCC law on the sufficiency of description issue. *See, In re Katz*, 563 F.2d 766 (5th Cir. 1977); *United States v. Smith*, 22 U.C.C.Rep. 502 (N.D.Miss.1977); *In re Malzac*, 14 U.C.C. Rep. 1223 (D.Vt., B.J., 1974).

Although we have held that the district court erred in directing a verdict for Southeast Mississippi and Merchants at the close of the Government's case in No. 78–3330

---

5. The same language appeared in the standard form financing statement in No. 78–3330 except subsection (a) read as follows:

"(a) Crops, livestock, supplies, other farm products, and farm and other equipment."

6. *See* n. 3, p. 437, n. 3, *supra*.

and in granting summary judgment for the same two companies in No. 79–2466, it is clear that the defendants are entitled to have the district court give full consideration to their defense that the Government waived its security interest in the swine. They contend that the FmHA county supervisor, in effect, authorized the farmers to dispose of the collateral. Having determined that the cases should be remanded for consideration of this issue, we note that such consideration should include a review of the evidence with respect to the circumstances of the sales, the course of dealing between the parties, the common usage of trade, and whether the FmHA authorized the sale of the swine. However, from the record before us on appeal we are unable to determine whether the trial court had sufficient probative evidence on this issue before it. It may be that the trial record as already developed includes sufficient evidence concerning Southeast Mississippi's and Merchants' claim that the FmHA authorized the sales. On the other hand, it may be necessary for the district court to take additional evidence. Therefore, under the circumstances of this case, we leave the selection of the most appropriate course to follow on remand to the discretion of the district court.

REVERSED and REMANDED for proceedings consistent with this opinion.