In re Joseph F. FOGARTY, Jr. and Virginia H. Fogarty, Debtors.

NCNB NATIONAL BANK OF FLORIDA, Plaintiff,

v.

Joseph F. FOGARTY, Jr. and Virginia H. Fogarty, Defendants.

Bankruptcy No. 88–03274–BKC–SMW.

United States Bankruptcy Court, S.D. Florida.

May 15, 1990.

Thomas R. Lehman, P.A., Thomas R. Lehman, Miami, Fla., for NCNB Nat. Bank of Florida.

Kozyak, Tropin & Throckmorton, P.A., Charles W. Throckmorton, Mary Aubry, Miami, Fla., for Joseph F. Fogarty, Jr. and Virginia H. Fogarty.

Stuzin & Camner, P.A., Raul Cuervo, Miami, Fla., for Meadowbrook Farms, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Chief Judge.

THIS MATTER came before the Court on March 17, 1990, on cross-motions for summary judgment filed by the Plaintiff, NCNB National Bank of Florida ("NCNB") and Defendants, Joseph F. Fogarty, Jr. and Virginia H. Fogarty (the "debtors"). At the conclusion of the hearing, both NCNB and the debtors agreed that there is no genuine issue of material fact and that the claims which are the subject of the parties' respective motions for summary judgment could be properly decided on the pleadings, deposition, admissions, documentary evidence submitted by NCNB and the court papers on file in this adversary proceeding and the debtors' bankruptcy case. The Court, having reviewed the foregoing evidence and court papers on file, heard the argument of counsel, and otherwise being fully advised in the premises, does hereby enter its findings of fact and conclusions of law.

Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 157(a, b) and 1334(b) and the district court's general order of reference. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(K).

This adversary proceeding was commenced on January 2, 1990 by NCNB filing a three count complaint to determine ownership of four thoroughbred foals (the "foals") born to four thoroughbred mares (the "mares"). The mares were once owned by the debtors and subject to a security interest held by NCNB; however, NCNB became the owner of the mares after NCNB was the successful bidder at the January 5, 1989 foreclosure sale of the mares pursuant to a final judgment foreclosing NCNB's security interest.

In Count I of its complaint, NCNB seeks declaratory relief determining that NCNB's ownership interest in the foals, which were born after NCNB acquired title to the mares, is superior to any ownership interest of the debtors. In response, the debtors have counterclaimed against NCNB, asserting a claim of lien avoidance under the strong-arm clause of the Bankruptcy Code, 11 U.S.C. § 544(a). The debtors assert that at the commencement of their bankruptcy case, NCNB held an unperfected security interest in the foals avoidable pursuant to § 544(a)(1) and Fla.Stat., § 679.301(1)(b). Therefore, the debtors argue, the foals can be recovered from NCNB. 11 U.S.C. § 550. It is NCNB's claim of ownership of the foals and the debtors' counterclaim for lien avoidance that are the subject of the cross-motions for summary judgment now before the Court.

The foregoing conflicting claims of NCNB and the debtors have generated ad-

ditional claims, third-party claims and a counterclaim in this adversary proceeding. First, NCNB has filed additional claims for the determination of the extent of NCNB's lien for care, maintenance, feeding and training of the foals under Fla.Stat., §§ 713.65 and 713.66, in the event debtors prevail on their counterclaim. The debtors have also filed a third-party claim against Meadowbrook Farms, Inc. ("Meadowbrook") for turnover of one of the foals now possessed by Meadowbrook. In turn, Meadowbrook has filed a counterclaim against the debtors for the determination of the extent of Meadowbrook's lien for care, feeding and maintenance of the Meadowbrook foal pursuant to Fla.Stat., §§ 713.65 and 713.66, if the debtors prevail on their third-party claim. Finally, Meadowbrook has filed a third-party claim against County National Bank of South Florida ("County") for breach of warranty of title for the foal now in the possession of Meadowbrook. These additional claims are dependent upon the debtors prevailing in their counterclaim against NCNB and this Court determining that the debtors hold an ownership interest in the foals superior to any party.

On August 30, 1984 the debtors and County entered into a security agreement (the "security agreement") whereby the debtors granted County a continuing and unconditional security interest in the mares and any offspring of the mares. On the same date, the debtors signed UCC–1 financing statements (the "financing statements") which contain detailed descriptions of the mares including their lineage, birth date and physical characteristics. However, the financing statements do not make reference to the offspring or foals of the mares. The financing statements were recorded with the appropriate clerks of the courts in the counties where the mares were located and where the debtors' principal place of business was located. With the consent of the debtors, County assigned its security interest in the mares to another bank, which was subsequently merged into NCNB, resulting in NCNB becoming the owner of the security interest in the mares.

In April, 1987, NCNB brought a foreclosure action in Marion County, Florida seeking to enforce the security agreement by foreclosing NCNB's security interest in, among other collateral, the mares. Prior to the foreclosure sale of the mares, the debtors filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. Less than two months later, NCNB and the debtors entered into an agreement for stay relief allowing NCNB to go forward with its foreclosure action to enforce the security agreement. This Court approved the parties' agreement and a foreclosure sale of the mares took place pursuant to NCNB's final judgment of foreclosure. NCNB was the successful bidder at the foreclosure sale of the mares, was issued certificates of title to the mares by the clerk of the court and took possession of the mares.

The foals were conceived in June, 1988, two months before the debtors' bankruptcy case. The foals were not listed in the debtors' bankruptcy schedules or statement of financial affairs filed with the Court three months after the foals were conceived. The foals were born to the mares in May, 1989, five months after NCNB purchased the mares at foreclosure sale. At the time the foals were born, the mares were in the possession of NCNB.

The debtors' plan of reorganization, including amendments (the "plan") was confirmed by order of this Court dated July 21, 1989. Neither the debtors' plan nor their disclosure statement make reference to the foals or the debtors' lien avoidance claim against NCNB. With the exception of a small class of unsecured claims classified together for administrative convenience, 11 U.S.C. § 1122(b), the plan provides for all allowed unsecured claims to be paid over a five year period from the annual "earnings" of the debtors. "Earnings" under the plan does not include recoveries of money or property by the debtors on claims such as the lien avoidance counterclaim brought by the debtors against NCNB in this adversary proceeding. Thus, if the debtors were to succeed in their counterclaim against NCNB, any recoveries of

property or money would not be distributed to unsecured creditors under the plan but instead inure to the personal benefit of the debtors. *See* 11 U.S.C. § 1141(b).

Of the four foals, only one foal is still in the possession of NCNB. In July, 1989, one foal was turned over to Meadowbrook; the remaining two foals were sold at auction with the consent of all parties and approval of this Court. The proceeds from the sale remain to be distributed.

This Court concludes that NCNB must prevail on its claim of ownership of the foals and that the debtors' counterclaim against NCNB for lien avoidance must be dismissed with prejudice. First, this Court finds and concludes that NCNB held, at the commencement of the debtors' bankruptcy case, a perfected security interest in the foals; accordingly, NCNB's lien was not vulnerable to avoidance under § 544(a)(1) of the Bankruptcy Code. Second, the debtors cannot satisfy an essential element of their counterclaim—that NCNB is the holder of a security interest—because a year before filing this adversary proceeding, NCNB's security interest merged into its title to the mares when NCNB purchased the mares at foreclosure sale. Third, the debtors are precluded from maintaining their lien avoidance action against NCNB because under the debtors' plan of reorganization, the debtors, not creditors, would benefit from the debtors' recovery of the foals free and clear of any interest of NCNB. A bankruptcy debtor cannot utilize, for its own benefit, an avoidance power which it holds in trust for its creditors; such action amounts to self-dealing in estate property and therefore, breach of a debtor's fiduciary duty to creditors.

■ Pursuant to 11 U.S.C. §§ 544(a)(1) and 1107(a), a debtor-in-possession may assert the rights of a lien creditor under Florida law, Fla.Stat., § 679.301, to defeat the interests of holders of an unperfected security interests as of the commencement of the debtor's bankruptcy case. *In re Communications Co. of America, Inc.*, 84 B.R. 822 (Bankr.M.D.Fla.1988). To perfect a security interest in collateral such as horses, a financing statement must be filed in the county of the debtor's place of business or the county where the horses are located. Fla.Stat., §§ 679.109(3), 679.302 and 679.401(1)(a). A financing statement must be signed by the debtor, contain the name of the debtor and his mailing address, the name and address of the secured party and contain a statement indicating the types, or describing the items, of collateral. Fla.Stat., § 679.402(1). The issue here is whether NCNB's financing statements, which contain detailed descriptions of the mares but no reference to their offspring, contain a sufficient description of collateral to have perfected NCNB's security interest in the mares *and* the foals as of the commencement of the debtors' bankruptcy case.

Comment 2 to 9–402 of the official text of the Uniform Commercial Code ("UCC") explains that the UCC filing requirements are intended to create a system of "notice filing" to place interested parties on inquiry notice that property of a debtor may be encumbered by a secured creditor:

> The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Uniform Commercial Code, 9–402, Comment 2 (1978 official text).

"The purpose of the [UCC] filing system is to give notice to creditors and other interested parties that a security interest exists in property of the debtor. Perfect accuracy, however, is not required so long as the financing statement contains sufficient information to 'put any searcher on inquiry.' The emphasis of the Uniform Commercial Code is thus on *commercial realities* rather than on corporate technicalities." *Matter of Glasco, Inc.*, 642 F.2d 793, 795 (5th Cir. Unit B, 1981) (citations omitted) (emphasis added). Thus, the question of whether NCNB's financing statements contain a description of collateral sufficient to place third parties on notice of NCNB's interest in the foals, necessarily involves an examination of the "commercial realities" of the parties' secured transaction within

the context of the thoroughbred horse industry.

Based on the evidence presented, this Court finds that the descriptions of collateral contained in NCNB's financing statements were sufficient to place third parties on notice that the foals of the mares were subject to the security interest of NCNB. It is widely acknowledged in the thoroughbred horse industry that the intrinsic value of a thoroughbred mare is based in large part on the mare's ability to produce foals. Furthermore, the link between a thoroughbred mare's value and its ability to produce foals becomes more acute if the mare is older than six years of age when on average, most thoroughbred mares are beyond their prime racing years. In this case, the mares were between seven and fourteen years of age at the commencement of the debtors' bankruptcy case. Accordingly, given the commercial importance of a thoroughbred mare's ability to produce foals, this Court concludes that NCNB's financing statements, containing only a description of the mares, were sufficient to alert third parties to NCNB's interest in the foals thereby perfecting NCNB's security interest in the foals.

First, the debtors argue that under the holding in this Court's decision in *In re I.A. Durbin, Inc.*, 46 B.R. 595 (Bankr.S.D.Fla. 1985), NCNB's financing statements do not contain a collateral description sufficient to perfect NCNB's security interest in the foals. In the *I.A. Durbin* case, this Court held that when a secured creditor lists specific items of property rather than generic types of property on a financing statement, perfection of the secured creditor's interest in property of the debtor cannot extend beyond the specific property listed in the financing statement. However, the facts in *I.A. Durbin* are distinguishable from the facts in this case.

In *I.A. Durbin*, the debtor had granted the lender a security interest in specific property of the debtor including certain general intangibles, equipment and fixtures of the debtor. Yet, the financing statement recorded by the creditor and the recorded documents referred to in the financing statement omitted general intangibles from its list of collateral. This Court held that the omission of "general intangibles" from the financing statement and the documents referred to in the financing statement rendered the creditor's security interest in the debtor's general intangibles unperfected and therefore, avoidable under § 544(a)(1).

The rationale for this Court's holding in *I.A. Durbin* was that third parties would not be alerted to the creditor's security interest in the debtor's general intangibles simply because the creditor's financing statement listed as collateral, other types of property of the debtor. This conclusion finds ample support in the UCC which specifically defines general intangibles as a separate type of property, distinct from accounts, inventory, equipment, etc. Fla. Stat., § 679.106. In contrast, the UCC does not define the offspring of animals as a distinct type of property separate from the animals themselves. Moreover, from a commercial standpoint, a thoroughbred mare and its offspring are not considered to be separate and distinct types of property in the thoroughbred horse industry. Therefore, to alert third parties to the existence of a security interest in the offspring or foals of thoroughbred mares which are subject to a security interest, it is not necessary for the secured party to list the "offspring" of the mares in its financing statement. This holding is consistent with the court of appeals decision in *U.S. v. Southeast Mississippi Livestock Farmers Ass'n.*, 619 F.2d 435 (5th Cir. 1980), which is binding precedent for this court. *See Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir.1981). In the *Southeast Mississippi Livestock Farmers Ass'n.* case, the court, applying Mississippi law, held that a lender had properly perfected its security interest in the offspring of hogs notwithstanding the omission of the words "increases" or "offspring" from the parties' financing statements. *Id.* at 439.

■ Secondly, the debtors in their counterclaim seek to avoid NCNB's "security interest" in the foals under §§ 544(a)(1) and

1107(a) of the Bankruptcy Code. Under the strong-arm clause of the Bankruptcy Code, § 544(a), a trustee or debtor-in-possession may assert the rights of a judgment lien creditor under Florida law, Fla. Stat., § 679.301, to defeat the interest of the holder of an unperfected security interest in property of the debtor. *In re Communications Co. of America, Inc.*, 84 B.R. 822 (Bankr.M.D.Fla.1988).

As a necessary element of the debtors' counterclaim for lien avoidance, the debtors must show that NCNB is the holder of an unperfected security interest in the foals. Fla.Stat., § 679.301. However, the debtors cannot show that NCNB is the holder of an unperfected security interest because when NCNB enforced its security agreement by foreclosure sale and purchase of the mares, NCNB's security interest merged into its title to the mares and was extinguished. It is settled Florida law that when a lienholder obtains title to liened property, the holder's lien merges into his title and the lien is extinguished. *Alderman v. Whidden*, 142 Fla. 647, 195 So. 605 (1940) (holding that a mortgage lien ceased to become an encumbrance on real property when the mortgage holder acquired title to the property); *City of Bradenton v. Northern Inv. Corp.*, 121 Fla. 470, 164 So. 136 (1935) (holding that a senior lienholder who obtained title to property through foreclosure sale could not later assert its senior lien as a defense to a later foreclosure action commenced by a junior lienholder who was omitted from the first action); and *See also, Nassau Realty Co. v. City of Jacksonville*, 144 Fla. 754, 198 So. 581 (1940) (holding that a creditor's lien against real property had merged into title upon the issuance of the certificate of title to the purchaser at the foreclosure sale). Thus, the debtors cannot prove an essential element of their lien avoidance claim.

█ The debtors further argue that the merger of NCNB's security interest constituted an avoidable post-petition transfer under § 549 of the Bankruptcy Code. This argument is unpersuasive because a court approved post-petition transfer is not avoidable. 11 U.S.C. § 549(a)(2)(B). This Court approved the agreement granting relief from the automatic stay entered into by the debtors and NCNB. Under the parties' agreement, the debtors consented to NCNB enforcing its security agreement (which included a grant of a security interest in the foals) through foreclosure sale. Therefore, the debtors cannot now complain that the merger and extinguishment of NCNB's lien, which resulted from a foreclosure sale consented to by the debtors, constituted an avoidable post-petition transfer.

█ Thirdly, "[t]he avoidance powers of the [bankruptcy] code are intended for the benefit of the debtor's creditors. Thus, the debtor-in-possession holds avoidance powers in trust for the benefit of creditors.... Where no benefit to the estate will result, a debtor-in-possession may not exercise the avoidance powers of a trustee." *In re J.E. Jennings, Inc.*, 46 B.R. 167, 169 (Bankr.E.D.Pa.1985) (citations omitted). A debtor may bring avoidance actions after confirmation of a debtor's plan of reorganization but only if recoveries from such actions benefit unsecured creditors. *Id.* In contrast, a debtor may not avoid a lien, valid against the debtor but voidable as to creditors, where avoidance of the lien will not serve to benefit the debtor's creditors. *Whiteford Plastics, Co., Inc. v. Chase Nat'l. Bank of N.Y.C.*, 179 F.2d 582 (2d Cir.1950) (affirming referee's order denying the debtor's claim for lien avoidance under § 70(c) of the Bankruptcy Act and upholding the validity of an unrecorded conditional sales contract where the property subject to the contract was not included in the debtor's confirmed plan of arrangement).

Under the debtors' plan of reorganization, it is the debtors who would retain any recoveries of property or money resulting from a successful lien avoidance action. Thus, if this Court were to allow the debtors to prevail in their lien avoidance counterclaim against NCNB it would result in the debtors utilizing an avoidance power to bring a windfall to themselves but no benefit to creditors. In effect, the debtors would be self-dealing in estate property which they hold in trust for creditors. Ac-

cordingly, this Court must preclude the debtors from succeeding on their counterclaim because the debtors' successful use of lien avoidance powers would result in a breach of their fiduciary duty to unsecured creditors and a violation of the good faith requirement governing all reorganization plans, 11 U.S.C. § 1129(a)(3).

Based on the foregoing analysis, this Court finds and concludes that NCNB is entitled to summary judgment as a matter of law on Count I of NCNB's complaint, NCNB's claim of ownership of the four foals and such claim of ownership by NCNB is not subject to avoidance by the debtors under 11 U.S.C. § 544(a)(1). Therefore, the debtors' counterclaim against NCNB is dismissed with prejudice and accordingly, all other claims asserted in this adversary proceeding, excluding Count I of NCNB's complaint, are rendered moot and dismissed with prejudice.

Pursuant to Bankruptcy Rule 9021(a), a Final Judgment of even date has been entered in conformity herewith.