[No. 12348-1-III.   Division Three.   May 11, 1993.]

FOOD SERVICES OF AMERICA, *Appellant,* v. ROYAL HEIGHTS, INC., *Defendant,* ZIRKLE FRUIT COMPANY, *Respondent.*

*James A. Perkins* and *Bogle & Gates,* for appellant.

*Jerome R. Aiken, Walter G. Meyer,* and *Meyer, Fluegge & Tenney,* for respondent.

SWEENEY, J. — Food Services of America (FSA) sued Royal Heights, Inc., a grower, and Zirkle Fruit Company, a commission merchant, for damages arising out of the sale of Royal's fruit by Zirkle. FSA held a security interest in Royal's fruit. FSA appeals the summary judgment dismissing its claim against Zirkle. We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

FSA operates a commission merchant fruit warehouse in Yakima. In 1988, it agreed to advance Royal up to $100,000 for its 1988 crop expenses. Royal raises apples and cherries. As part of the consideration, Royal executed a fruit handling contract agreeing to bring all of its 1988 apple and cherry crops to FSA for packing and sale. Royal also signed a promissory note for $100,000, a mortgage on a parcel of real estate, a financing agreement, a security agreement, and a U.C.C. financing statement. The security interest granted included the 1988 crops and all future crops until the debt was paid. On May 16, 1988, FSA perfected its security interest by filing a U.C.C. financing statement with the Secretary of State. The statement granted FSA a continuing security interest in "[a]ll crops grown including apples and cherries . . .".

In reliance on the security interest, FSA loaned in excess of $100,000 to Royal. Royal used the money to produce its cherry and apple crops. It delivered its 1988 cherry crop to FSA for packing and sale. Whether the proceeds of the sale of the cherry crop were sufficient to fully pay the FSA loan is disputed.

In September 1988, Royal brought its 1988 apple crop to Zirkle, another commission merchant, for packing and sale.

FSA orally notified Zirkle on several occasions between October 1988 and June 1989 of its secured interest in Royal's 1988 crops and its expectation of payment when the 1988 crop proceeds were paid. FSA did not give Zirkle written notice of the security interest.

On October 13, 1988, Zirkle advanced $100,000 to Royal. Royal claimed it also used the money advanced by Zirkle to produce and harvest its 1988 apple crop. Whether other documents were executed to secure the Zirkle loan is disputed. On January 17, 1989, Zirkle filed a financing statement with the Secretary of State purporting to secure an interest in "[a]ll of the crops of 1988 . . . only . . .". Zirkle then sold Royal's apple crop and applied the proceeds to its $100,000 loan.

FSA first sued Royal, but subsequently added Zirkle as a party defendant. FSA and Zirkle both moved for summary judgment. The court granted Zirkle's motion for summary judgment based on the Food Security Act of 1985, 7 U.S.C. § 1631. FSA appeals the summary dismissal of its claim against Zirkle.

The questions presented require that we review and interpret the Food Security Act of 1985 (Act) for the first time in this state. FSA contends that the Act does not protect Zirkle because its legal status was that of a lien creditor (holder)[1] rather than a commission merchant, buyer, or selling agent. We agree.

DISCUSSION

I

■ We begin our analysis by noting that construction of a statute is a matter of law. *King Cy. Water Dist. 75 v. Port of Seattle*, 63 Wn. App. 777, 782, 822 P.2d 331, *review denied*, 119 Wn.2d 1002 (1992). The standard of review is therefore de novo. *Draper Mach. Works, Inc. v. Department of Natural Resources*, 117 Wn.2d 306, 311, 815 P.2d 770 (1991). Statutes

---

[1]"Lien creditor" is a term used in RCW 62A.9, "Secured Transactions; Sales of Accounts, Contract Rights and Chattel Paper". RCW 62A.9-301(3). This case involves crops and therefore the correct term is "lienholder". Former RCW 60.11-.010(6).

in derogation of common law 'must be strictly construed. *McNeal v. Allen*, 95 Wn.2d 265, 269, 621 P.2d 1285 (1980). Strict construction is particularly appropriate here since the Act affords substantial protection for buyers, commission merchants, and selling agents of farm products from the claims of prior perfected lienholders, who would otherwise have priority. The protection is afforded notwithstanding actual knowledge of the preexisting lien. 7 U.S.C. § 1631(d), (g). We therefore strictly construe the Act to benefit only those intended to be protected. *Pacific Gamble Robinson Co. v. Chef-Reddy Foods Corp.*, 42 Wn. App. 195, 198, 710 P.2d 804 (1985), *review denied*, 105 Wn.2d 1008 (1986).

## II

The background and purpose of the Act are summarized in congressional findings:

> (1) certain State laws permit a secured lender to enforce liens against a purchaser of farm products even if the purchaser does not know that the sale of the products violates the lender's security interest in the products, lacks any practical method for discovering the existence of the security interest, and has no reasonable means to ensure that the seller uses the sales proceeds to repay the lender;
> (2) these laws subject the purchaser of farm products to double payment for the products, once at the time of purchase, and again when the seller fails to repay the lender;
> (3) the exposure of purchasers of farm products to double payment inhibits free competition in the market for farm products; and
> (4) this exposure constitutes a burden on and an obstruction to interstate commerce in farm products.

7 U.S.C. § 1631(a). The Act was intended to "remove such burden on and obstruction to interstate commerce in farm products." 7 U.S.C. § 1631(b). To achieve this purpose, the Act shifts the burden of potential loss from the buyers and commission merchants to the lenders who finance farm operations. *Lisco State Bank v. McCombs Ranches, Inc.*, 752 F. Supp. 329, 334 (D. Neb. 1990).

The Act provides that:

> a commission merchant or selling agent who sells . . . a farm product for others, shall not be subject to a security interest

created by the seller in such farm product even though the security interest is perfected and even though the commission merchant or selling agent knows of the existence of such interest.

7 U.S.C. § 1631(g)(1). Buyers of farm products are afforded similar protection. 7 U.S.C. § 1631(d).[2]

██ In interpreting a statute, we give effect to the plain meaning of the statutory language. *Cherry v. Municipality of Metro Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). Both parties agree that the plain language of the statute entitles Zirkle, as a commission merchant, to sell the apples free of FSA's perfected security interest because FSA failed to give Zirkle the required written notice of its security interest. However, this does not end the inquiry. Zirkle's legal relationship with Royal was twofold; it was both a commission merchant[3] and a lienholder — a junior lienholder. Former RCW 60.11.010(6). As a commission merchant, Zirkle accepted Royal's apples and agreed to sell them for a fee. 7 U.S.C. § 1631(c)(3). As a lienholder, Zirkle loaned money and attempted to perfect a security interest in Royal's 1988 apple crop to assure repayment. *See* former RCW 60.11.010(5), (6), .030. It is on this latter relationship that FSA bases its claim for conversion. And, it is in its capacity as lender and lienholder that Zirkle is not protected by the Act.

The Act must be construed with its underlying purpose in mind. *See Mina v. Boise Cascade Corp.*, 104 Wn.2d 696, 706, 710 P.2d 184 (1985). The purpose of the Act is to prevent Zirkle, as a commission merchant, or the buyers of Royal's

---

[2]The language of 7 U.S.C. § 1631(d), discussing the buyer of farm products, varies slightly from that of 7 U.S.C. § 1631(g)(1) discussing commission merchants and selling agents. 7 U.S.C. § 1631(d) provides that the buyer shall "take free of a security interest created by the seller . . ." and omits the words found in 7 U.S.C. § 1631(g)(1) "in such farm product . . .". We do not address the question raised by this difference in language, which is whether the buyer takes free of a security interest in the collateral and proceeds, while the commission merchant takes free of only the security interest in the collateral, but not the proceeds.

[3]7 U.S.C. § 1631(c)(3) defines commission merchant as "any person engaged in the business of receiving any farm product for sale, on commission, or for or on behalf of another person."

apple crop from being required to pay twice for the apple crop, once to Royal and again to FSA. Here, Zirkle did not pay Royal or FSA for this crop; it applied the proceeds to Royal's debt to it (Zirkle) with full knowledge of FSA's pre-existing perfected lien. There is nothing in the Act which would permit Zirkle as a junior lienholder to prefer itself over a prior perfected lien.

■ FSA argues that while it cannot enforce the security interest against the crop itself, the lien still exists and can be enforced against Zirkle, as a junior lien creditor, for the apple crop proceeds under state law. RCW 62A.9-203(3).[4] We agree. The Act does not preempt basic state law rules on the creation, perfection, or priority of security interests. H.R. Rep. No. 271, pt. 1, 99th Cong., 1st Sess. 110, *reprinted in* 1985 U.S. Code Cong. & Ad. News 1103, 1214.

A small number of federal cases discuss the Act. All are distinguishable. None involve application of the Act to suits by secured parties against commission merchants who were also lienholders.[5] Nor is *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 779 P.2d 697 (1989), cited by FSA, helpful. That case predates the Act and state statutes which created additional protection for crop handlers in Laws of 1991, ch. 286. *See* RCW 60.11.010(2), .020(3), .050(3). We are satisfied that our construction satisfies both the purpose and the letter of the Act.

### III

■ FSA also contends that the court erred in failing to grant FSA's summary judgment motion. In reviewing this claim of error, we engage in the same inquiry as the trial

---

[4]RCW 62A.9-203(3) provides:
"Unless otherwise agreed a security agreement gives the secured party the rights to proceeds provided by RCW 62A.9-306."

[5]*FDIC v. Bowles Livestock Comm'n Co.*, 937 F.2d 1350 (8th Cir. 1991); *United States v. Winter Livestock Comm'n*, 924 F.2d 986, 993 n.8 (10th Cir. 1991); *First Nat'l Bank v. Southwestern Livestock, Inc.*, 859 F.2d 847, 850 n.2 (10th Cir. 1988); *United States v. Progressive Farmers Mktg. Agency*, 788 F.2d 1327 (8th Cir. 1986); *Lisco State Bank v. McCombs Ranches, Inc.*, supra.

court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party. CR 56(c); *Taggart v. State*, 118 Wn.2d 195, 199, 822 P.2d 243 (1992); *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 394-95, 823 P.2d 499 (1992). The moving party has the burden of establishing the absence of any issue of material fact. *Safeco*, at 395.

Preliminarily, we address Zirkle's contention that FSA's failure to raise the validity of Zirkle's lien as an issue in the trial court precludes consideration of the issue on appeal. We consider only evidence and issues called to the attention of the trial court. RAP 9.12; *Alexander v. Gonser*, 42 Wn. App. 234, 237, 711 P.2d 347 (1985), *review denied*, 105 Wn.2d 1017 (1986). The record is clear that the existence of Zirkle's security interest in the apple crop was before the court, including the issue of whether Zirkle properly executed a security agreement with Royal. Review is therefore appropriate.

A security interest attaches and becomes enforceable against the debtor with respect to the collateral when the debtor signs the security agreement, value is given by the creditor and the debtor has rights in the collateral. RCW 62A.9-203(1), (2). A security interest is perfected when it has attached (RCW 62A.9-303(1)), and, in these circumstances, has been filed. RCW 62A.9-302(1).

Zirkle does not dispute that FSA complied with the statutory requirements and therefore properly perfected its security interest in Royal's apple crop, as of May 16, 1988. However, whether Zirkle complied and perfected its security interest is unclear. Zirkle presented no evidence that Royal signed a security agreement as required by RCW 62A.9-203(1)(a). But, Zirkle did file a financing statement. A security agreement may be filed as a financing statement. RCW 62A.9-402(1); *Hobart Corp. v. North Cent. Credit Servs., Inc.*, 29 Wn. App. 302, 304, 628 P.2d 842 (1981). Whether a financing statement or other writing qualifies as a security agreement presents a question of fact. *Kreiger v. Hartig*, 11 Wn. App. 898, 903, 527 P.2d 483 (1974).

■ However, even if Zirkle properly perfected its security interest, other issues of fact remain. Conflicting priorities between security interests in crops are governed by RCW 60.11. RCW 62A.9-312(2). Former RCW 60.11.050 provided in relevant part:

> (1) Except as provided in subsections (2), (3), and (4) of this section, conflicting liens and security interests shall rank in accordance with the time of filing.
>
> . . . .
>
> (3) A lien or security interest in crops otherwise entitled to priority pursuant to subsection (1) of this section shall be subordinate to a later filed lien or security interest to the extent that obligations secured by such earlier filed security interest or lien were not incurred to produce such crops.

Thus, FSA's security interest would be subordinate to Zirkle's interest if, and to the extent that, Zirkle's loan was used to produce the apple crop. The affidavit of Royal's president, produced by Zirkle, suggests that both loans were used to produce the 1988 apple crop. The conflicting priorities raise issues of fact not amenable to summary judgment.

FSA contends it is entitled to summary judgment because Zirkle violated the commission merchants act by failing to pay Royal in a timely manner. RCW 20.01.430. The issue was not raised in the trial court and therefore will not be reviewed on appeal. RAP 9.12; *Alexander v. Gonser, supra* at 237.

The case is reversed and remanded for trial.

THOMPSON, A.C.J., and MUNSON, J., concur.

Review granted at 122 Wn.2d 1015 (1993).