**MERCANTILE BANK OF SPRINGFIELD,**
Plaintiff,

v.

**JOPLIN REGIONAL STOCKYARDS, INC., Defendant.**

No. 93–3468–CV–S–4.

United States District Court,
W.D. Missouri,
Southern Division.

Oct. 17, 1994.

Robert H. Brownlee, David A. Lander, Thompson & Mitchell, St. Louis, MO, for plaintiff.

Monte P. Clithero, Taylor, Stafford, Woody, Cowherd & Clithero, Springfield, MO, E. Lawrence Oldfield, Oak Brook, IL, for defendant.

## *ORDER*

RUSSELL G. CLARK, Senior District Judge.

Several motions are pending before the Court. Plaintiff Mercantile Bank of Springfield ("Bank") filed a motion for partial summary judgment. Defendant Joplin Regional Stockyards ("Stockyard") responded to the motion and moved to strike its first affirmative defense from the Answer. In addition, Defendant filed a motion for summary judgment and responses have been filed. All motions are ready to rule. For the following reasons, the Defendant's motion to strike its first affirmative defense will be granted, Plaintiff's motion for partial summary judgment will be denied, and Defendant's motion for summary judgment will be granted.

### *Factual Background*

On December 10, 1988, B.M. Orr, Max Lynn Orr, and Kalia Orr ("the Orrs") signed a promissory note in favor of Plaintiff Bank. In conjunction with the loan, the Orrs signed an agreement granting the bank a security interest in various farm products including,

but not limited to: 350 mixed stock cows averaging 1000 pounds, 300 mixed calves averaging 400 pounds, 200 mixed steers averaging 750 pounds, 15 breeding bulls and 50 brood sows. Also listed as collateral are the "offspring" of the livestock. Plaintiff perfected its interest by filing the appropriate financing statements with the Recorder of Deeds for Lawrence County, Missouri and with the Missouri Secretary of State's Office. Under the terms of the security agreement, the Orrs were not to "sell, offer to sell, or otherwise transfer or encumber the collateral or any interest in the collateral without the prior written consent of Bank ..."

During the period of January 1, 1992, through October 29, 1992, Defendant Stockyard sold livestock named as collateral in the security agreement on behalf of the Orrs. Stockyard wrote the checks remitting the proceeds of the sales payable to either Max or B.M. Orr. Throughout this time frame, Plaintiff Bank knew the Orrs, without obtaining the Bank's prior written consent, were selling livestock in order to have funds with which to pay for operating expenses of their farm. The Orrs specifically told Mark Harrington, a Bank officer, of their actions. Harrington admits the Bank considered it to be "the ordinary course of business" to allow the Orrs to sell calves to pay for farm expenses. In addition, the Bank had notice of the sales as all of the checks remitting the sales proceeds were drawn on the Stockyard's account and were delivered by the Orrs to the Bank to make payments on their promissory note and to pay for expenses.

Plaintiff alleges the defendant is liable under the Food Security Act of 1985 ("the Act"), 7 U.S.C. § 1631, for the reasonable market value of the collateral sold. The Act provides that:

A commission merchant or selling agent who sells a farm product for others shall be subject to a security interest created by the seller in such farm product if ... within 1 year before the sale of such farm product the commission merchant or selling agent has received from the secured party or seller written notice of the security interest ...

7 U.S.C. § 1631(g)(2)(A).

Within one year before the sale of the livestock, the Bank sent notice to the Stockyard of its security interest in the collateral in accordance with the Act. In the notice the Bank instructed the Stockyard it could protect itself from being subject to the security interest by listing the Bank and the Orrs as joint payees on checks remitted to the Orrs in connection with the sale of collateral. 7 U.S.C. § 1631(g)(2)(A)(iv–v). Defendant Stockyard failed to list the Bank as a joint payee.

Plaintiff argues as a result of Defendant's failure to follow the instructions in the notice Defendant is now liable under the Act to Plaintiff for the reasonable market value of the collateral sold during the relevant time period. In response, Defendant argues Plaintiff waived its security interest in any collateral sold or proceeds therefrom by consenting to the sales and, therefore, the provisions of the Food Security Act have no bearing on this case.

### Standards for Summary Judgment

There are well settled principles in ruling a motion for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact present in the case and judgment should be awarded to the party seeking the motion as a matter of law. Fed.R.Civ.P. 56(c); *Langley v. Allstate Insurance Co.*, 995 F.2d 841, 844 (8th Cir.1993); *Camp v. Commonwealth Land Title Ins. Co.*, 787 F.2d 1258, 1260 (8th Cir.1986). Summary judgment is granted only when "the moving party has established the right to a judgment with such clarity as to leave no room for controversy." *Westchem Agr. Chemicals, Inc. v. Ford Motor Co.*, 990 F.2d 426, 429 (8th Cir.1993), *reh. denied,* May 6, 1993; *Vacca v. Viacom Broadcasting of Mo., Inc.,* 875 F.2d 1337, 1339 (8th Cir.1989). However, as the Supreme Court noted in *Celotex Corp. v. Catrett,* "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." 477 U.S. 317, 328, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Once the moving party produces credible evidence demonstrating there is no genuine issue of material fact, in order to defeat the motion, the nonmoving party must set forth specific facts demonstrating the existence of a genuine issue of material fact for every element of the case on which the nonmovant bears the burden of proof. Fed. R.Civ.P. 56(e); *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1091 (8th Cir.1992); *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984). If a party fails to make a showing sufficient to establish the existence of an element essential to its case, summary judgment is mandated against that party. *Celotex*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). For purposes of summary judgment, a dispute is genuine when evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Westchem*, at 429; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). In weighing the evidence, the Court views all facts and reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1245 (8th Cir.1991); *Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). The Court is not to decide material factual issues, rather it determines whether or not they exist. *Parmenter v. Federal Deposit Ins. Corp.*, 925 F.2d 1088, 1092 (8th Cir.1991); *Columbia Union Nat'l Bank v. Hartford Accident & Indem. Co.*, 669 F.2d 1210, 1212–13 (8th Cir.1982). Where the only disputed issues of fact are immaterial to the resolution of the legal issues, summary judgment is appropriate. *Get Away Club, Inc v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992).

### Motion for Partial Summary Judgment

Plaintiff filed a motion for partial summary judgment on the issue of Plaintiff's compliance with the pre-sale notification requirements set forth in the Food Security Act of 1985, 7 U.S.C. § 1631. In its first affirmative defense, Defendant alleges it did not receive notice pursuant to the Act. In its response to Plaintiff's motion for partial summary judgment, Defendant moves to strike this defense. The Court will grant the motion to strike Defendant's first affirmative defense from its answer. Further, once this defense is stricken, Plaintiff's motion for partial summary judgment is moot as the issue of notice under the Act is no longer in dispute. Therefore, Plaintiff's motion for partial summary judgment will be denied.

### Motion for Summary Judgment

Defendant moves for summary judgment arguing the Bank acquiesced or consented to the sale of livestock, thus waiving any secured interest rights in the collateral. In opposition to the motion, Plaintiff contends state law waiver concepts are inapplicable in cases involving the Food Security Act because the state and federal laws are contradictory and incompatible. Plaintiff argues the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Plaintiff quoting *International Paper Company v. Ouellette*, 479 U.S. 481, 492, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987). As a result, Plaintiff argues, the Supremacy Clause of the U.S. Constitution, Article VI requires the state laws to be preempted. It is further argued the pre-sale notice provisions of the Act were designed to provide farm product lenders with a means of insuring the preservation of their farm product liens and if the Court allowed defendant to successfully argue the Bank waived its rights to the secured interest, the purpose of the Act would be defeated.

### State Law Waiver and Preemption

In determining whether the federal Act preempts state common law regarding waiver, the Court follows a three-pronged analysis set forth by the United States Supreme Court. Under the Supremacy Clause, federal law may pre-empt state law when: (1) the federal law explicitly states that particular state laws are preempted; (2) a court may infer from the comprehensive scope of the legislation that Congress did not intend to leave room for state laws to supplement regulation in the area; or (3) the state law actually conflicts with the federal law. *International Paper Company v. Ouellette*, 479 U.S. at 491, 107 S.Ct. at 811; *Hillsborough*

*County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).

■ Upon analysis utilizing the three-pronged test, it becomes apparent the federal Food Security Act does not pre-empt state common law regarding waiver. First, the provisions of the Act do not explicitly pre-empt state law. Second, as demonstrated in the legislative history, the drafters of the Act clearly did not intend for the legislation to be so pervasive as to take up the entire area of secured interests in farm products. For example, the drafters of the Act expressed their intent for state law rules to continue to govern the area of creation, perfection, and priority of security interests. H.R.Rep. No. 271, 99th Cong., 1st Sess., pt. 1, at 110, reprinted in 1985 U.S.Code Cong. & Admin.News 1103, 1214; 9 C.F.R. § 205.202(a); *Lisco State Bank v. McCombs Ranches, Inc.,* 752 F.Supp. 329, 338 (D.Neb.1990); *Food Services of America v. Royal Heights, Inc.,* 69 Wash.App. 784, 850 P.2d 585 (Div. 3 1993). Similarly, the Act does not exclude state law waiver concepts from being used as a defense to an action for collection of the value of a secured interest. *See Neu Cheese Co. v. F.D.I.C.,* 825 F.2d 1270, 1272 (8th Cir.1987); *F.D.I.C. v. Bowles Livestock Com'n,* 937 F.2d 1350, 1352–53 (8th Cir.1991).

Looking at the third prong of the analysis, the Court rejects Plaintiff's argument that the federal and state laws are conflicting and incompatible. On the face of the Act, no language directly conflicts with waiver of interest concepts. Further, allowing waivers of lenders' security interests in no way nullifies the purpose of the Food Security Act. Congress clearly stated the Act was written to protect the purchaser of farm products from double payment for the products: paying the seller at the time of purchase and later paying the party with the security interest when the seller fails to pay its obligation. 7 U.S.C. § 1631(a)(2). Exposing purchasers of farm products to double payment inhibits free competition in the market. The Act was intended to "remove such burden on and obstruction to interstate commerce in farm products." 7 U.S.C. § 1631(b). "To achieve this purpose, the Act

shifts the burden of potential loss from the buyers and commission merchants to the lenders who finance farm operations." *Food Services of America,* 69 Wash.App. at 788, 850 P.2d at 587; *Lisco State Bank,* at 334. Allowing waiver in this case would in no way injure the purchaser of the livestock. Even if the Court accepts as true the Bank's argument that the purpose of the legislation is preservation of lenders' farm product liens, the Court's conclusion remains the same. While the Act allows the secured party to hold a commission merchant or selling agent subject to a security interest if proper notice is given, no source of law indicates that this security interest is absolute and can not be waived by the secured party itself. 7 U.S.C. § 1631(g)(2)(A). Any injury the Bank may experience from waiver is self-imposed and does not arise out of misapplication of the law.

### Waiver Analysis

Eighth Circuit courts turn to state U.C.C. provisions in addition to common law in making the determination whether a secured party's actions constituted a waiver of a security interest in farm products. *Neu Cheese Co. v. F.D.I.C.,* 825 F.2d 1270, 1272 (8th Cir.1987). The Uniform Commercial Code as adopted by Missouri provides that:

> a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement *or otherwise* . . . (emphasis added)

Section 400.9–306(2), R.S.Mo. (1994).

The Eighth Circuit accepted the above wording "or otherwise" in the Nebraska U.C.C. to include authorization by waiver:

> "We hold that performance under a security agreement, including the failure of the secured party to rebuke the debtor or object to the debtor's conduct in selling collateral in violation of the terms of the security agreement, may amount to a waiver of the lender's contractual right to require its written consent to a sale of collateral."

*Neu Cheese Co.,* at 1273 (quoting the Nebraska Supreme Court in *Farmers State Bank v.*

*Farmland Foods, Inc.,* 225 Neb. 1, 402 N.W.2d 277 (1987)).

While few federal cases discuss the Food Security Act, an abundance of Eighth Circuit and Missouri case law clearly addresses what facts constitute waiver. In cases comprised of nearly identical facts to the case at bar, debtors signed security agreements requiring the lender bank's written consent prior to any sale of collateral. Nonetheless, the debtor sold livestock subject to the security agreement without obtaining the bank's prior consent, either written or oral. Banks were found to have knowledge of the sales by the debtor taking checks remitting sale proceeds to the bank and applying them to the loan or depositing them in personal accounts. The banks in these cases made no objection and took no action to inform the debtor that the bank disapproved of this conduct and would not tolerate further sales occurring without written permission. As in the case at bar, bank officers expressed that selling of collateral is the normal course of business with agriculture customers. *Charterbank Butler v. Central Cooperatives, Inc.,* 667 S.W.2d 463, 464 (Mo.App.1984). Given these facts, courts found there was a waiver of the bank's security interest. *See Neu Cheese,* at 1273; *F.D.I.C. v. Bowles Livestock Com'n,* 937 F.2d 1350, 1352–53 (8th Cir.1991) discussing *F.D.I.C. v. Bowles Livestock Com'n Co.,* 739 F.Supp. 1364 (D.Neb.1990).

In *Farm Bureau Co-op. Mill and Supply, Inc. v. Blue Star Foods, Inc.,* 238 F.2d 326 (8th Cir.1956), the Eighth Circuit Court of Appeals adopted the proposition of law upon which this case rests when it held "where the mortgagee authorizes or gives consent to the mortgagor to sell the mortgaged property the mortgage lien thereon is discharged." *Id.* at 332. In *First National Bank and Trust Company of Oklahoma City, Oklahoma v. Stock Yards Loan Company,* 65 F.2d 226 (8th Cir.1933) the court made it clear that "[w]hen a mortgagee under a chattel mortgage allows the mortgagor to retain possession of the property and to sell the same at will the mortgagee waives his lien ..." *Id.* at 229–30. Case law demonstrates consent amounting to waiver of a security interest in collateral may be estab-

lished by implication arising from a course of conduct as well as by express words. *Farmers National Bank v. Missouri Livestock Commission Company,* 53 F.2d 991 (8th Cir. 1931); *State of Missouri v. Dahmer,* 743 S.W.2d 462, 465 (Mo.App.1987); *Moffett Brothers and Andrews Commission Company v. Kent,* 5 S.W.2d 395 (Mo.1928), *Accord, Commercial Credit Corp. v. Blau,* 393 S.W.2d 558, 566–67 (Mo.1965). Both Missouri and Eighth Circuit law provides that when a bank's business relationship repeatedly authorizes the debtor to sell collateral, this authorization, express or implied, automatically terminates the security interest notwithstanding the bank's attempt to condition consent upon payment of the proceeds to the mortgage. *United States v. Missouri Farmer's Ass'n Inc.,* 764 F.2d 488, 489 (8th Cir.1985); *Charterbank Butler v. Central Cooperatives, Inc.,* 667 S.W.2d at 465; *See State of Missouri v. Dahmer,* 743 S.W.2d at 465; *Pieper v. First National Bank of Linn Creed,* 453 S.W.2d 926, 931 (Mo.1970).

This Court finds Plaintiff Bank waived its security interest in the collateral through its course of conduct. The Bank knew livestock subject to the security interest was being sold continuously. The Bank had knowledge of the conduct of the debtors through the Orr's direct communications with Bank officer Mark Harrington and by the debtors making deposits and payments on their loan at the bank using checks written by the Stockyard. Nevertheless, the Bank acquiesced and did not object or protest to the Orrs actions. Quite the opposite, the Bank considered the sales to be part of the ordinary course of business in their dealings with the Orrs. The Court determines this activity constitutes an implied agreement to alter the Bank's right, title, and interest in the collateral. While Defendant Stockyard would ordinarily be subject to the Bank's security interest having conceded receiving proper notice, the Bank waived its interest by not protesting the sale of collateral taking place without written consent as required by the security agreement.

### Disputed Issues of Fact

In opposition to Defendant's motion for summary judgment, Plaintiff at-

tempts to create an issue of disputed fact contending that if, in fact, the Orrs had the Bank's consent to sell collateral, the consent was given to sell calves but not full-grown cattle. The Court finds this is not a genuine issue of material fact. The security agreement lists what livestock are to be considered collateral including various numbers of sows, steers, bulls, and calves averaging 400 pounds. In the agreement, the term "collateral" also includes "offspring." Therefore, the Bank held a security interest in young calves weighing less than 400 pounds. No matter what weight or age of the cattle sold, the Bank held a security interest in the animals and knew they were being sold in violation of the provisions of the security agreement. The Bank's actions constituted a waiver of their interest in all of the livestock sold by the Defendant. In conclusion, the Court finds no genuine issue of material fact is left to be decided at trial.

Accordingly, it is hereby

ORDERED Defendant's motion to strike its first affirmative defense is granted; and it is further

ORDERED Plaintiff's motion for partial summary judgment is denied on the basis that it is moot; and it is further

ORDERED Defendant's motion for summary judgment is granted.