**FARMERS & MERCHANTS STATE BANK, Plaintiff and Appellee,**

v.

**Kevin TEVELDAL, d/b/a Kevin's Livestock Management Service, Defendant and Appellant.**

**No. 18547.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1994.

Decided Dec. 7, 1994.

Michael E. Sebastian, Kimball, for plaintiff and appellee.

Flynn Fischer, Wessington Springs, for defendant and appellant.

SABERS, Justice.

Bank and feed supplier claim priority in competing security interests in hogs owned by farmer and the proceeds therefrom. Feed supplier appeals summary judgment in favor of Bank. We affirm.

## FACTS

Farmers & Merchants State Bank (Bank) and Kevin Teveldal d/b/a Kevin's Livestock Management Service (Teveldal) claim priority of competing security interests in hogs owned by Gary Haiar (Haiar) and in the proceeds of sale. On January 7, 1991, Bank filed a financing statement with the South Dakota Secretary of State and perfected a security interest in Haiar's farm products, including beef cattle, dairy cattle and hogs.

Teveldal provided Haiar with hog feed in the amount of $24,358.96 from September 3, 1991 to May 24, 1992. Bank claims it released $32,710.00 to Haiar from August 9, 1991 to June 12, 1992 so that Teveldal could be paid for supplying feed. When Haiar did not pay for the feed, Teveldal telephoned the Secretary of State's office to inquire whether any security interest existed in Haiar's hogs.

He was told that the Bank had a security interest in beef and dairy cattle under the farm products section of the Effective Financing Statement list (EFS), which Congress required in the Food Security Act (FSA).[1] Teveldal filed a Financing Statement with the Secretary of State on August 4, 1992, perfecting a security interest in 600 head of Haiar's hogs to secure payment of debt of $26,852.04.

Between August 6 and August 14, 1992, some of Haiar's hogs were sold at the John Morrell Meatpacking Company (Morrell) in Sioux Falls, S.D. Morrell issued two checks totalling $5,257.37 to Bank, Teveldal, and Haiar as joint payees. Teveldal refused to release his claim to the checks. The Bank took possession of the remaining hogs and they were sold by the Bank for $35,319.18.[2]

Bank brought suit to determine the priority of the competing security interests in the hogs and the proceeds from the sale to Morrell. Teveldal counterclaimed, claiming his right to the proceeds based on a superior perfected security interest. The trial court denied both parties' first motions for summary judgment on April 14, 1993. The trial court granted Teveldal leave to amend his counterclaim to include a claim for $26,852.04 for feed supplied to Haiar for the hogs. Teveldal claimed that if Bank's interest were deemed superior there would be unjust enrichment because supplying feed helped the hogs survive. The court held that Bank had the first perfected security interest in Haiar's hogs.

In addition to the written description of the collateral on form UCC–1, the holder of a security interest in farm products is to designate the products by a code number for EFS purposes under the FSA. Bank provided the codes for beef and dairy cattle but not for

---

1. The FSA mandated the central filing system for farm products, 7 U.S.C. § 1631, and, as a result, the EFS codes were created. *See* Form UCC–1 (South Dakota Secretary of State, 1987 revision).

2. Bank's brief claims the State required them to take possession of the hogs or the State would take them. It appears that Gary Haiar was involved in the Wessington Springs Puppy Farm which had neglected animals which caused them serious health problems. Haiar allegedly had been neglecting and mistreating the hogs. Twenty feeder pigs and three sows died but the remainder were saved. Bank claims it was required to take possession of the hogs to feed and nurse them back to health. Once they became marketable, they were sold by Bank.

hogs. The trial court held that Bank was perfected despite its failure to enter the code for hogs under the EFS. The trial court also held that Teveldal was not a "buyer" protected by the FSA, 7 U.S.C. § 1631(c)(1). Both parties moved for summary judgment. The trial court granted summary judgment in favor of Bank on Bank's claim for the sale proceeds and against Teveldal on his counterclaim for the price of the feed.

### Whether Bank's failure to comply with the EFS code numbering system destroys perfection of its security interest as against a secured supplier of feed?

■ The standard of review on a motion for summary judgment is "whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Mooney's v. S.D. Dept. of Transp.*, 482 N.W.2d 43, 45 (S.D.1992) (citations omitted). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Lamp v. First Nat. Bank of Garretson*, 496 N.W.2d 581, 583 (S.D.1993) (citations omitted). "Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of summary judgment is proper." *Id.*

Each party claims a superior perfected security interest in Haiar's hogs. Under SDCL 57A–9–312(5)(a), the first security interest perfected is superior to all competing claims. Since Bank perfected first, we must determine whether Bank's failure to list the EFS code for hogs destroyed perfection of its security interest and whether the FSA protects Teveldal.

Under SDCL 57A–9–402(8), "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Bank included in its description of collateral "[a]ll cattle, *hogs*, sheep & wool now owned or hereafter ac-

quired, together with natural increase from said livestock." Plaintiff's Exhibit A (emphasis added). Bank included the EFS code numbers for beef cattle and dairy cattle, but not for hogs.

In *First Bank v. Eastern Livestock Co.*, 837 F.Supp. 792 (S.D.Miss.1993), the court considered the sufficiency of a collateral description in a financing statement under the EFS. The court found no case under the FSA, so it resorted to the U.C.C. for precedent. *Id.* at 799. The court held that:

> the majority of courts addressing the adequacy of financing statements under the U.C.C. have held that a financing statement, in order to perfect a security interest, need not specifically identify the property which is the subject of a security interest; rather, it is sufficient if the description would put a reasonably prudent prospective lender or buyer on notice that the collateral sought to be purchased or encumbered might be the subject of a preexisting security interest.

*Id.* (citations omitted).

■ "[T]he financing statement is designed only to provide *general* notice or warning that certain collateral *might* already be encumbered[.]" *Production Credit Ass'n v. Bartos*, 430 N.W.2d 238, 241 (Minn.App. 1988) (emphasis added). Therefore, the financing statement need not provide all information but only that information which states that a transaction has taken place and that details may be obtained from the address shown. *First Bank*, 837 F.Supp. at 799.

A majority of courts have adopted the view that a description is sufficient if it "merely provides notice of the need for additional inquiry." *United States v. Southeast Mississippi Livestock Farmers Ass'n*, 619 F.2d 435, 438 (5th Cir.1980). Here, Bank's financing statement provided general notice that Bank held a security interest in Haiar's hogs. Teveldal should have conducted a search more thorough than a mere EFS code inquiry. The omission of the code number in the EFS section did not render Bank's financing

statement insufficient. The formal requirements for a financing statement were met, SDCL 57A–9–402(1), and the Bank's filing constituted perfection of its security interest in Haiar's hogs. SDCL 57A–9–303(1).

■ Teveldal places too much reliance upon a telephone call to the Secretary of State. "The secretary of state is not responsible for accuracy and completeness of the information furnished verbally in response to a telephone request." SDCL 57A–9–407.1. Teveldal did not ask for a computer printout which would have shown the Bank's interest was perfected in hogs as well as cattle. A reasonable inquiry by requesting a printout would have shown the hogs were also covered under the financing statement. Teveldal could have received a copy of the entire financing statement prior to supplying the feed, thereby precluding the need for this lawsuit. SDCL 57A–9–403(9), 57A–9–407(3).

■ Even though Bank perfected its security interest, Teveldal claims he is a "buyer in ordinary course" protected under the FSA, 7 U.S.C. § 1631. The FSA provides "a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations *shall take free of a security interest* created by the seller, *even though the security interest is perfected* [,] and the buyer knows of the existence of such interest." 7 U.S.C. § 1631(d) (emphasis added). Under SDCL 57A–1–201(9), a "buyer in ordinary course" is a person "who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods[,] buys in ordinary course from a per-

son in the business of selling goods of that kind[.]" The FSA deleted the "good faith and without knowledge" requirement to protect buyers even though they know of the existence of a perfected security interest. *Lisco State Bank v. McCombs Ranches, Inc.,* 752 F.Supp. 329, 334 (D.Neb.1990). Prior to the FSA, a buyer of farm products could be liable to the seller/debtor *and* to the party holding a security interest in the farm products. 7 U.S.C. § 1631(a)(2); *see* SDCL 57A–9–307; *Lisco,* 752 F.Supp. 329. Under the FSA, buyers of farm products are not exposed to liability for double payment.[3] 7 U.S.C. § 1631(d); *Sanborn Cty. Bank v. Magness Livestock Exch.,* 410 N.W.2d 565, 566 n. 1 (S.D.1987).

■ "Buying" does not include receiving goods or documents of title under a preexisting contract as security "for or in total or partial satisfaction of a money debt," SDCL 57A–1–201(9), thereby excluding "attaching creditors and others who take goods in satisfaction of preexisting debts" from the definition of a "buyer in ordinary course." 2 J. White & R. Summers, *Uniform Commercial Code,* § 26–13, at 533, n. 2 (3rd ed. 1988). Teveldal did not obtain a security interest in Haiar's hogs until after he had supplied feed. Therefore, it was a preexisting debt. A creditor who receives a security interest for a preexisting debt is not a "buyer in ordinary course."[4] *Id.,* § 26–13, at 533, nn. 2–3.

■ Other than eliminating double payment liability for a "buyer in ordinary course" in farm products, Congress did not intend to preempt state law relating to the creation, perfection, or priority of security

---

·3. The FSA also protects commission merchants and selling agents from incurring double payments for any farm products sold on commission on behalf of a seller of farm products. 7 U.S.C. § 1631(g)(1).

"Commission merchant" is any person "engaged in the business of receiving any farm product for sale, on commission, or for or on behalf of another person." 7 U.S.C. § 1631(c)(3). A "selling agent" is "any person, other than a commission merchant, who is engaged in the business of negotiating the sale and purchase of any farm product on behalf of a person engaged in farming operations." 7 U.S.C. § 1631(c)(8).

Teveldal claims to be a "selling agent" protected under the FSA. However, he did not engage in the business of negotiating or selling the hogs; he only supplied feed. The FSA does not protect a creditor taking a security interest in farm products. *See* 7 U.S.C. § 1631.

4. Although not the issue here, a preexisting debt may supply "value" for attachment of a security interest. *Id.* § 24–6, at 320; SDCL 57A–1–201(44)(b) (defining "value" as "security for or in total or partial satisfaction of a preexisting claim[.]").

interests. 9 C.F.R. § 205.202; *Food Services of Am. v. Royal Heights*, 69 Wash.App. 784, 850 P.2d 585, 588 (Div. 3 1993). Teveldal erroneously argues that he is a buyer in the ordinary course, deserving protection under the FSA. Obviously, Teveldal was not a buyer. He was a seller and supplier of feed. Therefore, he is not entitled to protection under the FSA. The trial court correctly concluded that Teveldal was not a "buyer" protected under the FSA.

We have considered Teveldal's other arguments and determine them to be without merit.

Affirmed.

MILLER, C.J., and WUEST, AMUNDSON and KONENKAMP, JJ., concur.