BATTLE CREEK STATE BANK, APPELLEE, V.
MART PREUSKER AND PHYLLIS PREUSKER, APPELLANTS.
571 N.W. 2d 294

Filed December 12, 1997.    No. S-96-198.

James F. Brogan for appellants.

Stan A. Emerson, of Sipple, Hansen, Emerson & Schumacher, for appellee.

Robert J. Hallstrom, of Brandt, Horan, Hallstrom & Sedlacek, for amicus curiae Nebraska Bankers Association, Inc.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

This appeal presents two principal issues: (1) Whom does 7 U.S.C. § 1631 (1994) of the federal Food Security Act (FSA) protect? (2) What effect does the FSA have, if any, on security interests under the Uniform Commercial Code (U.C.C.)? The appellants, Mart Preusker and Phyllis Preusker, as creditors of their daughter and son-in-law, received proceeds from the sale of fluid milk to a dairy cooperative to pay part of an existing debt. The milk was subject to a perfected security interest of the appellee, Battle Creek State Bank, pursuant to Neb. U.C.C. § 9-307(1) (Reissue 1992). However, the bank had failed to list milk on a "Nebraska Effective Financing Statement" that was filed pursuant to Neb. Rev. Stat. §§ 52-1301 through 52-1321 (Reissue 1988). The district court for Madison County granted summary judgment to the bank, and the Preuskers appealed. We conclude that the Preuskers are not buyers in the ordinary course of business and are not protected under the FSA. Because the FSA was not intended to alter the creation, perfection, or priority of security interests under the U.C.C., the Preuskers are liable to the bank for their conversion of the proceeds. Accordingly, we affirm.

## BACKGROUND

In November 1990, Todd Duhachek and Deb Duhachek borrowed money from the Battle Creek State Bank. The Duhacheks executed a financing statement granting the bank a security interest in certain farm property, including a security interest in the "products, proceeds . . . and profits thereof . . . [in] [a]ll farm products or inventory, including but not limited to all livestock, crops . . . and products of crops and of livestock . . . ." The financing statement was properly filed. In January 1992, the Duhacheks executed a "Nebraska Effective Financing Statement" pursuant to §§ 52-1301 through 52-1321, listing cattle and calves as some of the products subject to the bank's security interest. However, the statement did not include milk.

Before proceeding further, an explanation of the Nebraska Effective Financing Statement might be helpful in understanding the background and later analysis. The Nebraska Effective Financing Statement is not the conventional financing statement that is filed under the Nebraska U.C.C. Rather, it is the form

filed pursuant to the FSA that allows a creditor to retain a security interest effective against a buyer of farm products in the ordinary course of business.

The appellants in this case, the Preuskers, are Deb Duhachek's parents. Between August 1991 and August 1994, the Preuskers loaned the Duhacheks money with the agreement that it would be repaid from the proceeds of fluid milk that was to be produced and sold by the Duhacheks. The Duhacheks sold milk to Northeast Nebraska Milk Producers, Inc., a Nebraska cooperative corporation, and between June 1993 and December 1994, the Duhacheks repaid part of the loan from the Preuskers through the assignment of the proceeds of the milk sold to the cooperative. The affidavit of the bank indicated that the Preuskers received not less than $4,838.48 in milk proceeds. The affidavits presented by the Preuskers stated that the bank had knowledge of the loans and assignment of proceeds, and that the bank acquiesced in the arrangement. However, the court determined that the Preuskers' affidavits were not based on personal knowledge. The affidavit of the bank stated that the Duhacheks did not disclose their indebtedness to the Preuskers on loan disclosure statements that they provided to the bank in January and June 1994. In December 1994, the Duhacheks filed a petition for bankruptcy. The bank then sought to recover from the Preuskers the proceeds they received following the sale of milk by the Duhacheks.

The district court, in its order granting summary judgment to the bank, found that the Preuskers received proceeds from the sale of milk that was subject to the bank's perfected security interest. The district court further found that a Nebraska Effective Financing Statement covering milk had not been filed by the bank pursuant to §§ 53-1301 through 52-1321 and that the Duhacheks had not given the Preuskers a security interest in the milk. The district court determined that the failure of the bank to list milk on the Nebraska Effective Financing Statement did not invalidate the security interest in milk that was properly perfected under the U.C.C. The court further determined that the Preuskers' affidavits concerning the bank's acquiescence to the distribution of proceeds were not based on foundational facts and that an action for conversion was proper. Accordingly,

the district court held that the bank's lien had priority over any claims the Preuskers had to the proceeds of the milk sales and awarded $4,838.48 to the bank.

## ASSIGNMENTS OF ERROR

The Preuskers assign as error the district court's actions in (1) sustaining the bank's motion for summary judgment, (2) over-ruling the Preuskers' motion for summary judgment, (3) finding that no issues of material fact were present in the case, (4) ignoring a motion by the Preuskers to join Northeast Nebraska Milk Producers as an additional necessary party defendant, (5) finding that the bank did not waive its security interest in fluid milk when it filed a Nebraska Effective Financing Statement that did not include milk as a listed product, (6) finding that the bank's lien on fluid milk survived the sale of the milk to the Northeast Nebraska Milk Producers, and (7) finding that the bank was entitled to a judgment for conversion.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings, deposi-tions, admissions, stipulations, and affidavits in the record dis-close that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Farmers Union Co-Op Ins. Co. v. Allied Prop. & Cas., ante* p. 177, 569 N.W.2d 436 (1997); *Schendt v. Dewey,* 252 Neb. 979, 568 N.W.2d 210 (1997).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Tracy v. City of Deshler, ante* p. 170, 568 N.W.2d 903 (1997); *Schendt v. Dewey, supra.*

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must pro-duce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Farmers Union Co-Op Ins. Co. v. Allied Prop. & Cas., supra; Tracy v. City of Deshler, supra; Vilcinskas v. Johnson,* 252 Neb. 292, 562 N.W.2d 57 (1997).

## ANALYSIS

The Preuskers contend that any proceeds they received as a result of the milk sales were not subject to the bank's perfected security interest. They argue that the bank waived that interest by filing a Nebraska Effective Financing Statement that did not include fluid milk and that the sale of the milk to the dairy cooperative entitles the Preuskers to protection under the FSA. The Preuskers further argue that the remedy of tortious conversion is not available to the bank and that there are issues of material fact in this case.

### FEDERAL FOOD SECURITY ACT

The Preuskers argue that any proceeds they received are not subject to the bank's security interest because they are protected under the FSA due to the fact that the bank did not file a Nebraska Effective Financing Statement that covered fluid milk. However, a history of the FSA reveals that absent a showing that the Preuskers were buyers in the ordinary course of business, they are not entitled to protection under the FSA.

Prior to the federal 1985 farm bill, commonly known as the FSA, buyers of farm products in the ordinary course of business did not take free of a security interest in such products. This rule has commonly been referred to as the "farm products" rule of the U.C.C. and has acted as an exception to the general article 9 rule that a buyer in the ordinary course of business would take free of a security interest even if the buyer knew of its existence. Under the farm products rule, a secured lender who did not authorize the sale of collateral could sue the buyer in conversion when the debtor sold farm products and did not repay the lender. The consequence of this was that the buyer could be forced to pay for the products twice, once when they were purchased, and again to the secured party. See, *First Nat'l Bank and Tr. v. Miami Co. Co-op Ass'n*, 257 Kan. 989, 897 P.2d 144 (1995); *Food Services v. Royal Heights*, 69 Wash. App. 784, 850 P.2d 585 (1993), *aff'd* 123 Wash. 2d 779, 871 P.2d 590 (1994) (describing history of FSA).

Nebraska's uniform version of the farm products rule is located at Neb. U.C.C. § 9-307(1), which states:

A buyer in ordinary course of business . . . *other than a person buying farm products from a person engaged in*

*farming operations* takes free of a security interest created by his or her seller even though the security interest is perfected and even though the buyer knows of its existence. A buyer of farm products may be subject to a security interest under sections 52-1301 to 52-1321 [the enabling legislation created after the adoption of the FSA].

(Emphasis supplied.)

Therefore, prior to the enactment of the FSA, a person buying farm products from a person engaged in farming operations did not take free of a security interest in those products and was subject to the possibility of paying twice for the products.

In response to the wide criticism of the farm products rule, Congress passed the FSA in 1985. The FSA preempted state laws and rules governing farm products. The FSA states:

**(d) Purchases free of security interest**

Except as provided in subsection (e) of this section and notwithstanding any other provision of Federal, State, or local law, *a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller*, even though the security interest is perfected; and the buyer knows of the existence of such interest.

**(e) Purchases subject to security interest**

A buyer of farm products takes subject to a security interest created by the seller if—

. . . .

(2) in the case of a farm product produced in a State that has established a central filing system—

. . . .

(B) the secured party has filed an effective financing statement or notice that covers the farm products being sold[.]

(Emphasis supplied.) 7 U.S.C. § 1631.

The FSA also provides for direct notice to be given to buyers of farm products in order for lenders to preserve their security interests in those products. See § 1631(e)(1)(A). The stated purpose of the FSA was to remove burdens on interstate commerce because the exposure of buyers of farm products to double payment inhibited free competition in the market for farm products. See § 1631(a)(1) through (a)(4).

Nebraska, by adopting § 52-1301, chose to implement a central filing system, as set out in § 1631(e)(2), that holders of security interests are encouraged to use. Section 52-1303 defines a buyer in the ordinary course of business as "a person who, in the ordinary course of business, buys farm products from a person engaged in farming operations who is in the business of selling farm products." Section 52-1320 then provides that "[a] buyer in the ordinary course of business buying farm products covered by the central filing system shall take subject to the security interest identified under such system . . . ."

### PROTECTION OF BUYERS IN
### ORDINARY COURSE OF BUSINESS

The Preuskers contend that they are protected under the FSA because the dairy cooperative purchased the milk as a buyer in the ordinary course of business and because milk was not specifically listed on the Nebraska Effective Financing Statement. Consequently, the Preuskers argue that regardless of whether or not they are buyers in the ordinary course of business, they should receive protection under the FSA because the bank's security interest would not have been effective against the dairy cooperative.

While this court has never interpreted the provisions adopted pursuant to the FSA, jurisdictions that have done so have made it clear that the only persons entitled to protection under the FSA are those who are strictly buyers in the ordinary course of business. Thus, it has been held that where a party is acting as a creditor or junior lienholder, that party cannot claim protection as a buyer in the ordinary course of business under the FSA. See, *Farmer's Bank v. Dykes Tobacco Inc.*, 945 S.W.2d 433 (Ky. App. 1997) (protection does not extend to warehouseman while he is wearing hat of creditor/junior lienholder); *Food Services v. Royal Heights*, 69 Wash. App. 784, 850 P.2d 585 (1993), *aff'd* 123 Wash. 2d 779, 871 P.2d 590 (1994) (commission merchant who acts as secured lender must look to state law to determine priority of its security interest). Furthermore, it is clear that the FSA is not meant to preempt or interfere with other provisions of the U.C.C. regarding the creation, perfection, and priority of security interests. See, H.R. Rep. No. 271, Part 1, 99th Cong., 1st Sess. 110, reprinted in 1985 U.S. Code

Cong. & Ad. News, 1103, 1214; 9 C.F.R. § 205.202(a) (1997); *Springfield Mercantile Bank v. Joplin Stockyards*, 870 F. Supp. 278 (W.D. Mo. 1994); *Lisco State Bank v. McCombs Ranches, Inc.*, 752 F. Supp. 329 (D. Neb. 1990); *Farmers & Merchants State Bank v. Teveldal*, 524 N.W.2d 874 (S.D. 1994).

In the instant case, the Preuskers are not buyers in the ordinary course of business. The Preuskers did not purchase the milk at issue in this case. Rather, the Preuskers are creditors who received the proceeds of the milk sales. By asserting that they are protected under the FSA, the Preuskers are essentially arguing for an outcome that would circumvent the priority system of the U.C.C. by giving the Preuskers a superior priority over the bank's prior perfected security interest. Such an outcome is contrary to the purpose of the FSA, which is to protect buyers in the ordinary course of business from being required to pay twice for farm products, while retaining other state law U.C.C. provisions regarding the creation, perfection, and priority of security interests. Accordingly, because they are creditors, and not buyers in the ordinary course of business, the Preuskers are not entitled to protection under the FSA.

## WAIVER

The Preuskers further contend that by not including milk in the Nebraska Effective Financing Statement, the bank waived any claim it had to a security interest in milk under article 9 of the U.C.C. However, as previously discussed, the Preuskers are not buyers in the ordinary course of business, and it is clear that §§ 52-1301 through 52-1321 were not intended to remove regular U.C.C. provisions regarding the creation, perfection, or priority of security interests. Furthermore, it has been held that the failure to list a code number for hogs on an effective financing statement did not render the financing statement filed under the U.C.C. insufficient. See *Farmers & Merchants State Bank v. Teveldal, supra*. Therefore, even though the Nebraska Effective Financing Statement filed by the bank did not cover fluid milk, the bank still had a valid, perfected security interest in milk under the U.C.C. The only effect of the failure to list milk on the effective financing statement is to protect a buyer of that milk in the ordinary course of business. The failure to list milk does not act as a waiver of the prior security interest against

other entities, such as in priority battles with other creditors. Accordingly, the Preuskers' waiver argument is without merit.

### Tortious Conversion

The Preuskers assign as error the district court's finding that a conversion action was proper in this case. The Preuskers cite to the case *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992), for the proposition that a conversion action is not proper because the financing statement does not include a provision for the bank to take possession of the collateral, the promissory note is not payable on demand, and the fluid milk was never owned by the bank. However, *Barelmann* was a case in which a debtor sued for conversion following the seizure of property in a replevin action. The debtor in *Barelmann* did not have an immediate right to possession of the property because the property was subject to a security interest, and thus, a conversion action was not appropriate.

We have previously held that when property is subject to a security interest, an exercise of dominion or control over the property that is inconsistent with the rights of the secured party constitutes, as to that secured party, a conversion of the property. *Chadron Energy Corp. v. First Nat. Bank*, 221 Neb. 590, 379 N.W.2d 742 (1986). The instant case is factually different from *Barelmann* and is controlled by the rule as stated in *Chadron Energy Corp.*

By taking the proceeds from the sale of fluid milk, collateral in which the bank had a perfected security interest, the Preuskers exercised dominion and control over that property in a manner inconsistent with the bank's rights as the priority creditor. Accordingly, an action for conversion is appropriate to this case.

### Dairy Cooperative as Necessary Party

The Preuskers next contend that the district court erred in failing to join the dairy cooperative as a necessary party after the Preuskers made a motion to join the cooperative as a defendant.

The presence of necessary parties to a suit is a jurisdictional matter and cannot be waived by the parties; it is the duty of the plaintiff to join all persons who have or claim any interest

which could be affected by the judgment. *Robertson v. School Dist. No. 17*, 252 Neb. 103, 560 N.W.2d 469 (1997); *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). An indispensable or necessary party to a suit is one who has an interest in the controversy to an extent that such party's absence from the proceedings prevents a court from making a final determination concerning the controversy without affecting such party's interest. *Robertson v. School Dist. No. 17, supra*; *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995).

A plaintiff need not join all tort-feasors as defendants in an action for damages. Every joint tort-feasor is liable for all damages to which his conduct has contributed, and it is no defense that these damages would not have occurred without the concurring misconduct of another person. *Fick v. Herman*, 161 Neb. 110, 72 N.W.2d 598 (1955).

The dairy cooperative was not a necessary party to this action. Because this was an action for tortious conversion, the bank was not required to join all possible joint tort-feasors. Furthermore, the Preuskers were liable for the entire amount converted and have no defense based on arguments that any conversion could not have occurred without the actions of the dairy cooperative. Thus, in the absence of the dairy cooperative as a defendant, the district court could make a determination in this case without affecting the dairy cooperative's interests. Therefore, the dairy cooperative was not a necessary party to this action.

### ISSUES OF MATERIAL FACT

Finally, the Preuskers contend that there were issues of material fact in this case and argue that the following material facts were not established: (1) the quantity of milk sold, the seller, and the price paid by the buyer; (2) the means by which the proceeds were paid to the Preuskers; (3) the amount, if any, paid to the Preuskers, by whom, and by what authorization; (4) the bank's knowledge regarding the application of the milk proceeds; and (5) whether the products were produced on a specific piece of farm property.

The Preuskers failed to present facts disputing the bank's contentions regarding the quantity of milk sold, the amount

paid, the location of the production of the milk, and the means by which the Preuskers were paid. The affidavits and pleadings presented by the bank gave facts supporting the contention that the Preuskers received at least $4,838.34 from an assignment of proceeds from the sale of milk in which the bank had a security interest. The Preuskers did not present any facts to controvert that they did not receive this amount of milk proceeds.

On a motion for summary judgment, after the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Kime v. Hobbs*, 252 Neb. 407, 562 N.W.2d 705 (1997); *Melick v. Schmidt*, 251 Neb. 372, 557 N.W.2d 645 (1997); *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997). Furthermore, if the movant for summary judgment submits an affidavit as to a material fact, and that fact is not contradicted by the adverse party, the court will determine that there is no issue as to that fact. *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996). Because the Preuskers failed to present evidence showing that there was a dispute over the facts presented by the bank, the district court was correct in determining that there were no issues of material fact.

In regard to the knowledge of the bank of the loans made by the Preuskers and any acquiescence by the bank to the distribution of the proceeds of the milk sales, the district court correctly held that the affidavits of the Preuskers on these issues were not based on personal knowledge. Supporting and opposing affidavits (1) shall be made on personal knowledge, (2) shall set forth such facts as would be admissible in evidence, and (3) shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Young v. First United Bank of Bellevue*, 246 Neb. 43, 516 N.W.2d 256 (1994). Statements in affidavits as to opinion, belief, or conclusions of law are of no effect. *Id.*

The Preuskers' affidavits did not provide facts to support their statements that the bank had knowledge of the loans. However, the affidavit of the bank provided specific facts to indicate that it did not have knowledge as alleged by the

Preuskers. Therefore, the statements of the Preuskers were mere opinions and were not based on personal knowledge.

## CONCLUSION

Because the Preuskers are not buyers in the ordinary course of business, they are not entitled to protection under the FSA. Furthermore, because the FSA was not intended to alter the perfection, creation, or priority of security interests under the U.C.C., the failure of the bank to list milk on the Nebraska Effective Financing Statement did not act as a waiver of the bank's prior perfected security interest under the U.C.C. Therefore, the Preuskers are liable to the bank for their conversion of the proceeds, and the dairy cooperative was not a necessary party to the action. The judgment of the district court is affirmed.

AFFIRMED.