AG SERVICES OF AMERICA, INC., An Iowa Corporation, AG Acceptance Corporation, A Delaware Corporation, Plaintiffs,

v.

UNITED GRAIN, INC., A Kansas Corporation; John Does 1–15, Real Names Unknown, Defendants and Third–Party Plaintiffs,

v.

Mark Kolling and Kimberly Kolling, Willard Holtzen, and George Gerdes, Third–Party Defendants.

No. 4:98CV5008.

United States District Court,
D. Nebraska.

Dec. 22, 1999.

§ 106, or for purposes of the Internal Revenue Code in general, and discussing relevant regulations and case law.

Tim W. Thompson, Kimberli D. Dawson, Kelley, Scritsmier Law Firm, North Platte, NE, for plaintiff.

Michael L. Johnson, Luebs, Leininger Law Firm, Grand Island, NE, for defendants and third-party defendants.

Mark Kolling, Ruskin, NE, pro se.

Jefferson Downing, Keating, O'Gara Law Firm, Lincoln, NE, Terry L. Wittler, Cline, Williams Law Firm, Lincoln, NE, for third-party defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Three motions for summary judgment provide an opportunity to examine the Food Security Act of 1985 and the complex interplay between that federal law and the statutes of Nebraska. Given the paucity of precedent, this is a difficult task. That said, the decision to grant in part and deny in part the plaintiffs' motion, and to deny the other motions, is explained in the following portion of this opinion.

### I. Background

This is a suit for damages regarding the alleged conversion of pledged corn. As noted previously, it is brought pursuant to Section 1324 of the Food Security Act of 1985, codified at 7 U.S.C. § 1631.[1] *See generally* Charles W. Wolfe, *Section 1324, of the Food Security Act of 1985: Congress Preempts the "Farm Products Exemption" of Section 9–307(1) of the Uniform Commercial Code,* 55 U.M.K.C. L.Rev. 454 (1987).

This controversy involves seven parties. Those parties are: a lender, a wholly owned subsidiary of the lender, two farmer-debtors, a corn buyer and two other farmers.

AG Services of America, Inc., (AG Services) lent money to Mark Kolling and Kimberly Kolling (Kollings) so that they could farm. The Kollings resided in Nuckolls County, Nebraska. However, they raised crops in Nuckolls and Thayer counties. To collateralize the loan, the Kollings gave AG Services a security interest in all their crops whether grown in Nuckolls or Thayer counties. (Am.Compl., Ex. B.)[2]

"Effective Financing Statements" (EFS) were filed by AG Services regarding the Kollings' crops. One was filed in Nuckolls County, Nebraska on January 4, 1996. (Am.Compl., Ex. D.)[3] Another EFS was filed in Thayer County, Nebraska on January 5, 1996. (Am.Compl., Ex. C.)[4] The contents of these documents (the Effective Financing Statements) were transmitted to the Nebraska Secretary of State for inclusion in the "central filing system" and, thereafter, the "master list.". (Affidavit of Greg Lemon, Assistant Secretary of State for Nebraska and operator of Nebraska's central filing system, ¶¶ 10 and 11.)[5]

The EFS filed in Nuckolls County did not describe grain grown in Thayer, County, although it did describe the crops grown in Nuckolls County. The EFS filed in Thayer County did not describe grain grown in Nuckolls County, although it described the crops grown in Thayer County. For purposes of the information contained

---

1. The amended complaint asserts both diversity and federal question jurisdiction. (Filing 38 ¶ 4.) Nevertheless, it ultimately alleges that United Grain is liable to the plaintiffs because United Grain "failed to comply with 7 U.S.C. § 1631" and therefore the defendant "unlawfully appropriated and converted the corn...." (*Id.* ¶ 17.)

2. This document is found as an attachment to filing 38.

3. This document is found as an attachment to filing 38.

4. This document is found as an attachment to filing 38.

5. This document is found at filing 76, exhibit 7.

in the "master list" published by the State of Nebraska, it made no difference whether an EFS was filed in the county of the debtor's residence or some other county because:

[a] secured party could have filed a Nebraska Effective Financing Statement in a county other than the county of the debtor's residence and the same information would appear in the Secretary of State's central filing master list as if the Nebraska Effective Financing Statement was filed in the county of the debtor's residence. The information displayed in the master list would be identical to that which would have been displayed if the secured party had filed a Nebraska Effective Financing Statement in the county of the debtor's residence or in the various counties where the debtor's crops were grown.

(Lemon Aff. ¶ 12.)

The plaintiffs claim that in the fall of 1996, from about September 10, 1996 to about December 9, 1996, Mark Kolling delivered several loads of corn grown by him in Nebraska to elevators in Kansas and Nebraska that were owned by United Grain, Inc. (United Grain). There is a factual dispute whether the corn came from the Kollings' farm in Nuckolls County, Thayer County or both counties.

In any event, the plaintiffs claim that some of the Kollings' corn was delivered to apply on contracts between United Grain and Mark Kolling, and some of the Kollings' corn was delivered to satisfy contracts between United Grain, Willard Holtzen (Holtzen) and George Gerdes (Gerdes). From September 25, 1996, to December 9, 1996, United Grain issued checks to Mark Kolling, without including AG Services as a payee. However, Holtzen or Gerdes were sometimes named as payees with Mark Kolling.

The contents of the 1996 and 1997 "master lists" maintained by Nebraska's "central filing system" showed that AG Services had a security interest in corn produced by the Kollings in both Nuckolls County, Nebraska and Thayer County, Nebraska. (Lemon Aff. ¶¶ 10 and 11.) In contrast, United Grain was not a "registrant" with Nebraska's "central filing system" in either 1996 or 1997. (*Id.* ¶¶ 7 and 8.) "Registrants" receive a "master list" showing a compilation of the information derived from "Effective Financing Statements" that are provided to the Secretary of State by county officials. (*Id.* ¶ 4.)

On March 12, 1997, AG Services assigned the Kollings' note and related security interest to AG Acceptance Corporation (AG Acceptance). (Gibson Aff. ¶¶ 4 and 5; attached Ex. 1 (agreement between AG Services and AG Acceptance.)) [6] AG Acceptance is wholly owned by AG Services and it has no employees of its own. (*Id.* ¶ 5).[7] In that agreement, AG Services promised to act as a "servicer" of the loans and it agreed to perform all functions for AG Acceptance respecting administration, servicing and collection of the debts. (*Id.*) AG Services filed an assignment in favor of AG Acceptance on June 13, 1997, in Thayer County, and on June 16, 1997, AG Services filed a similar assignment with Nuckolls County; that is, on those dates, the assignments showed in the county records that AG Services had assigned its security interest in the Kollings' corn to AG Acceptance. (Answer to Am. Compl. ¶¶ 10(b)(i) & (ii).)[8]

AG Services filed suit against United Grain on March 25, 1998. (Filing 1.) By amended complaint, AG Acceptance was added as a party on March 29, 1999. (Filing 38.) AG Services and AG Acceptance claim that the Kollings have failed and refused to pay the debt evidenced by the

**6.** This affidavit may be found at filing 81. The agreement is in an attached folder. In addition, the affidavit contains a typographical error in that there are three paragraphs numbered "5." This citation refers to the first paragraph numbered "5."

**7.** This citation refers to the second paragraph numbered "5."

**8.** This document may be found at filing 39.

note originally issued to AG Services and later assigned to AG Acceptance. Therefore, since Mark Kolling sold his corn to United Grain that was pledged to AG Services, and since the debt to the plaintiffs has not been paid, AG Services and AG Acceptance sue United Grain for conversion of the pledged corn. Not to be outdone, United Grain has sued the Kollings, Holtzen and Gerdes seeking indemnity should United Grain be found liable to the plaintiffs. (Filing 42.)

## II. The Merits

The plaintiffs (AG Services and AG Acceptance), the defendant (United Grain), and two third-party defendants (Holtzen and Gerdes) have each filed motions for summary judgment. The motions raise some issues that impact all parties and other issues that are peculiar to a particular party. Therefore, it is best to take the motions issue-by-issue rather than motion-by-motion. I do so next.

### A.

**1. The Effective Financing Statements Were Valid When Filed as Against Corn Grown in Thayer County Even Though the EFS Filed in the Debtors' County of Residence, Nuckolls County, Failed to List Corn Grown in Thayer County**

**2. Unless Some Other Defense Applies, Since United Grain was not a "Registrant," It Took the Corn Subject to the Plaintiffs' Security Interest**

The defendant United Grain, and third-party defendants Holtzen and Gerdes, claim that AG Services and AG Acceptance have no right to enforce a lien against corn grown in Thayer County, Nebraska because the EFS filed in Nuckolls, County, Nebraska did not list corn grown in Thayer County, Nebraska. The plaintiffs argue that their Effective Financing Statements were valid even as against corn grown in Thayer County and that United Grain was not a "registrant" under Nebraska's Central filing system. Therefore, unless some other defense applies, they argue that

United Grain took the corn subject to the Effective Financing Statements.

I agree with the plaintiffs. I hold that the failure to include Thayer County corn in the Nuckolls County EFS is not fatal under the governing law, which, in this case, is 7 U.S.C. § 1631. I come to this conclusion because the information from the Effective Financing Statements filed in both counties was submitted to the Nebraska Secretary of State in compliance with 7 U.S.C. § 1631(c)(2)(A) and thus a registrant would have received all the notice contemplated by the statute. The federal statute does not require filing in the county of the debtors' residence, and the information from the Effective Financing Statements that was submitted to the Nebraska Secretary of State complied fully with all the requirements of 7 U.S.C. § 1631(c)(4)(A)–(H). Still further, even if there was an error because one statement did not describe the Thayer County corn, the statements, when viewed together, substantially complied with federal (and state) law and the error must be disregarded under 7 U.S.C. § 1631(c)(4)(I). Finally, it is undisputed that United Grain was not a "registrant" and as a result United Grain would take the corn subject to the plaintiffs' security interest. 7 U.S.C. § 1631(e)(2).

#### Undisputed Facts

It is undisputed that we are dealing with a "security interest" and a "farm product" (corn) within the meaning of 7 U.S.C. § 1631. It is undisputed that the Kollings gave AG Services a security interest in all the corn. Except for the failure to include the Thayer County corn in the EFS filed in the county of the debtors' residence, it is undisputed that the Effective Financing Statements were otherwise valid when filed. In other words, when filed, the Effective Financing Statements literally complied with the requirements of 7 U.S.C. § 1631(c)(4)(A)–(H).

Further, it is undisputed that the EFS filed in Nuckolls County did not list the corn grown in Thayer County. But, it is

also undisputed that the corn grown in Thayer County was the subject of an EFS filed in that county. It is further undisputed that the Secretary of State for Nebraska included the information on both of these statements in Nebraska's central filing system after the county clerks for both counties transmitted the required information to the Secretary of State. In addition, it is undisputed that the security interest in the corn held by AG Services in both counties would have been apparent to any registrant with Nebraska's central filing system. Stated differently, any registrant with Nebraska's central filing system would have known of AG Services' security interest in the Kollings corn grown in Nuckolls and Thayer counties.

Finally, it is undisputed that United Grain was not a registrant with Nebraska's central filing system. In other words, as a corn buyer, United Grain failed to seek the protection afforded buyers of farm products under 7 U.S.C. § 1631.

### Federal Law Applies When Deciding the Adequacy of An EFS

■ Before turning to a discussion of the arguments, I first decide that 7 U.S.C. § 1631, rather than Nebraska law, is the law that applies when deciding the adequacy of an EFS. Because conflicting state laws regarding lien enforcement against buyers of farm products burdened and obstructed interstate commerce in those products, Congress enacted 7 U.S.C. § 1631 to govern when security interests in such things as corn could be enforced against a buyer in the ordinary course of business. 7 U.S.C. § 1631(b) (declaration of purpose). Thus, federal law, and not Nebraska law, governs the adequacy and effect of the Effective Financing Statements at issue in this case. *See Lisco State Bank v. McCombs Ranches, Inc.,* 752 F.Supp. 329, 333–35 (D.Neb.1990) (conversion action by bank against cattle buyer; applying 7 U.S.C. § 1631 rather than Neb. U.C.C. § 1–201(9) requiring "good faith"

on the part of the cattle buyer; "Nebraska's statutory scheme is merely the enabling legislation necessary to create the 'central filing system' suggested by [7 U.S.C. § 1631]; it is not the controlling rule of law that governs actions" regarding the "adequacy and effect of the notice" to buyers). *See also* Mark V. Bodine, *Clear Title: A Buyer's Bonus, a Lender's Loss— Repeal of U.C.C. § 9–307(1) Farm Products Exception by Food Security Act § 1324[7 U.S.C. § 1631,* 26] Washburn L.J. 71, 80 (1986) (the law "effectively preempts state action, and any state legislation intended to provide more protection for buyer or lender may therefore be rendered ineffective") (hereinafter *"Clear Title"*).

### The Purpose of the Statute

With the understanding that 7 U.S.C. § 1631 provides the rules for deciding whether the Effective Financing Statements were valid when filed, I next briefly discuss that statute. Section 1631 was part of the Food Security Act of 1985. *Lisco State Bank,* 752 F.Supp. at 333. That section "statutorily abrogates the widely enacted 'farm products' exception of § 9–307(1) of the Uniform Commercial Code." *Id.* To lessen the impact upon interstate commerce, Congress desired "to eliminate potential exposure 'of purchasers of farm products to double payment liability.'" *Id.* (quoting 7 U.S.C. § 1631(a)(2)).

In general, the statute provides that buyers[9] of farm products take free of security interests in those products even though the security interest is perfected according to state law and even though the buyer knows of the security interest. *Id.* (quoting 7 U.S.C. § 1631(d)). However, a buyer may take a farm product subject to a security interest in two situations. *Id.*

First, the buyer takes subject to a security interest if the buyer is given "written notice" pursuant to 7 U.S.C.

---

**9.** The statute distinguishes between a "buyer," a "commission merchant" or a "sales agent" for certain purposes. *Compare* 7 U.S.C. § 1631(e)(1) *with* 7 U.S.C.

§ 1631(g)(2). In this case, United Grain has been treated by the parties as a "buyer" and I agree with that characterization.

§ 1631(e)(1)(A) or 7 U.S.C. § 31(e)(3)(A). Second, the buyer may take subject to a security interest upon the "filing of an 'effective financing statement' " which is "a part of a *federally approved* state 'central filing system.'" *Lisco State Bank,* 752 F.Supp. at 333. (emphasis in original) (citing and quoting 7 U.S.C. § 1631(c)(2)).

In this case, there is no claim that the "written notice" portion of the statute is involved. On the contrary, the dispute centers upon the significance of the "Effective Financing Statement" provisions of 7 U.S.C. § 1631 in a case where the buyer did not receive the statutory "written notice." Therefore, we must know three things.

We must know how "Effective Financing Statements" are used to notify buyers of farm products about security interests. We must know what constitutes an "Effective Financing Statement." Finally we must know what happens when a creditor has filed an EFS and a buyer, who has not registered with the "central filing system," purchases a farm product without paying the creditor.

### The Notice Provided by An EFS

As described earlier, "Effective Financing Statements" are part of the "central filing system" that was essentially imposed upon the states by Congress. 7 U.S.C. § 1631(c). Pursuant to the directions contained in the federal statute, the Secretary of State for a particular state compiles the information about security interests from "Effective Financing Statements." 7 U.S.C. § 1631(c)(2)(C) & (D).

Under Nebraska law, at the time the corn was sold, financing statements were filed with a county clerk who then submitted them (or information from them) to the Secretary of State. *Compare* Neb.Rev. Stat. § 52–1312(1) & (2) (Reissue 1993) (filing with county clerk in the county of the debtor's residence who then transmits the information to the Secretary of State) *with* Neb.Rev.Stat. § 52–1312(1) (Reissue

1998)[10] (filing with Secretary of State). The federal statute, 7 U.S.C. § 1631(c)(2)(A) & (c)(4)(B), provides that the EFS (or information from it) is to be filed with or transmitted to the Secretary of State (or a designate) so that it can be placed in the central filing system and ultimately on the master list.

■ The federal statute did not bar the now discarded Nebraska method of filing with the county clerk who then files the document or a summary with the Secretary of State. Despite that fact, the important question under federal law is not where the EFS is filed but whether the information in the EFS arrives at the "central filing system" such that it can be used to notify potential buyers. In an interpretative opinion, the Department of Agriculture has emphasized that: "The place of filing an EFS is wherever State law requires, which need not be with the system operator so long as the system operator receives the information needed for the master list, including the information required in subsection (c)(4)(D)." 9 C.F.R. § 205.203 (West 1999). In other words, under the federal statute, the place of filing is not important so long as the required information makes it to the central filing system.

After the information reaches the Secretary of State and it is compiled, he or she prepares a "master list" summarizing the information for the entire state. The "master list," describing the claim of every creditor who has filed an EFS in the state, is then sent to buyers who "register" with the Secretary of State. 7 U.S.C. § 1631(c)(2)(E). In this way, a "registered" buyer will be given written notice of a creditor's claim if an EFS has been filed anywhere in the state. Thereafter, the buyer can secure protection from the claim by following the statutory directions. *See* 7 U.S.C. § 1631(e)(3)(B) (imposing liability unless the buyer secures a release).

---

**10.** Parenthetically, Nebraska's penchant for publishing a plethora of "reissues" and "supplements," all of which may be effective at the same time while bearing different years, makes research very difficult. The reader is thus cautioned.

### The Statutory Requirements For An EFS

The following are the federal statutory requirements for an "Effective Financing Statement," to wit:

The term "effective financing statement" means a statement that—

(A) is an original or reproduced copy of the statement, or, in the case of a State which (under the applicable State law provisions of the Uniform Commercial Code) allows the electronic filing of financing statements without the signature of the debtor, is an electronically reproduced copy of the statement;

(B) other than in the case of an electronically reproduced copy of the statement, is signed and filed with the Secretary of State of a State by the secured party;

(C) other than in the case of an electronically reproduced copy of the statement, is signed by the debtor;

(D) contains,

(i) the name and address of the secured party;

(ii) the name and address of the person indebted to the secured party;

(iii) the social security number of the debtor or, in the case of a debtor doing business other than as an individual, the Internal Revenue Service taxpayer identification number of such debtor;

(iv) a description of the farm products subject to the security interest created by the debtor, including the amount of such products where applicable; and a reasonable description of the property, including county or parish in which the property is located;

(E) must be amended in writing, within 3 months, similarly signed and filed, to reflect material changes;

(F) remains effective for a period of 5 years from the date of filing, subject to extensions for additional periods of 5 years each by refiling or filing a continuation statement within 6 months before the expiration of the initial 5 year period;

(G) lapses on either the expiration of the effective period of the statement or the filing of a notice signed by the secured party that the statement has lapsed, whichever occurs first;

(H) is accompanied by the requisite filing fee set by the Secretary of State; and

(I) substantially complies with the requirements of this subparagraph even though it contains minor errors that are not seriously misleading.

7 U.S.C. § 1631(c)(4). *See also* 9 C.F.R. § 5.103 (West 1999) (describing minimum information necessary on an EFS).

■ The Department of Agriculture has stressed that the federal law "does not include any requirement that the EFS be the instrument by which a security interest is created or perfected." 9 C.F.R. § 205.202(a) (West 1999). Indeed, an EFS "need not be the same as a financing statement or security agreement under the Uniform Commercial Code ... but can be an entirely separate document meeting the definition in (c)(4)." *Id.* The federal statute was not intended to alter state law on the creation of security interests or the priority of those interests as between competing creditors, but, rather, the intent was to define when a buyer of farm products took subject to the security interest of a particular creditor. *See, e.g.,* Mark V. Bodine, *Clear Title,* 26 Washburn L.J. at 93–94 (discussing the interplay between the federal statute and the Uniform Commercial Code).

Thus, decisions interpreting the Uniform Commercial Code's provisions regarding financing statements and security agreements are not dispositive and may be irrelevant when trying to decide whether an EFS is valid under 7 U.S.C. § 1631. *See, e.g., Battle Creek State Bank v. Preusker,* 253 Neb. 502, 505–06, 571 N.W.2d 294, 297 (1997) ("The Nebraska Effective Financing Statement is not the conventional financing statement that is filed under the Nebraska

U.C.C. Rather, it is the form filed pursuant to the FSA that allows a creditor to retain a security interest effective against a buyer of farm products in the ordinary course of business"). In other words, the pertinent question is not whether the EFS amounts to a financing statement or creates or perfects a security interest for purposes of the Uniform Commercial Code. On the contrary, the relevant issue is whether the questioned document meets the definition of an EFS under the federal statute.

### The Impact of an EFS Upon an Unregistered Buyer

If a proper EFS is filed with the Secretary of State, but the "buyer" has not registered with the Secretary of State, the buyer takes the farm product subject to the creditor's security interest. The federal statute provides:

> A buyer of farm products takes subject to a security interest created by the seller if . . .
>
> (2) in the case of a farm product produced in a State that has established a central filing system—
>
> (A) the buyer has failed to register with the Secretary of State of such State prior to the purchase of farm products, and
>
> (B) the secured party has filed an effective financing statement or notice that covers the farm products being sold.

7 U.S.C. § 1631(e)(2)

### The Dispute

Next, I confront the argument raised by the defendant and third-party defendants. They claim that the plaintiffs cannot enforce either EFS against corn grown in Thayer County because the EFS filed in Nuckolls County, Nebraska did not describe the corn grown in Thayer County, Nebraska.

This argument is based upon Neb.Rev. Stat. § 52–1312(1) & (2) (Reissue 1993). In part, that statute stated: "That an effective financing statement . . . shall be filed in the office of the county clerk in the county of the debtor's residence" and then "the county clerk[ ] transmit[s] to the Secretary of State" the information regarding the EFS for preparation of the "master list." *Id.*[11] *See also* Neb.Rev.Stat. § 52–1307(2) (Reissue 1993) (defining an EFS as one that "[i]s signed and filed by the secured party in the office of the county clerk in the county of the debtor's residence. . . .") The defendant and third-party defendants argue that because the EFS filed in Nuckolls County, the county of the debtors' residence, failed to identify corn grown in Thayer County, the plaintiffs have no claim for conversion of corn grown in Thayer County.

■ I reject this argument for two reasons. First, taken together, the "Effective Financing Statements" contained all the information required by the federal statute to give notice to buyers of the creditor's claim against corn grown in Thayer County. *See* 7 U.S.C. § 1631(c)(4). In particular, the two statements, when placed on the master list, advised a potential buyer of the claims of the creditor regarding corn grown *in both counties.* Consequently, the statements specifically satisfied the location-specification-requirements of the statute. *See* 7 U.S.C. § 1631(c)(4)(D)(iv) (requiring a description of "the farm products . . . including county or parish in which the property is located").

Nowhere does the federal statute condition the effectiveness of an EFS upon filing in a particular place such as a county clerk's office. On the contrary, the Department of Agriculture has stated that the federal law is unconcerned with the actual place of filing "*so long as the system operator receives the information needed*

---

11. As noted earlier, the statute no longer permits filing with a county clerk but rather requires direct filing with the Secretary of State. Neb.Rev.Stat. § 52–1312(1) (Reissue

1998). I assume, without deciding, that the 1993 version of the Nebraska law applies to this case since the sales took place prior to the 1998 amendments.

*for the master list, including the information required in subsection (c)(4)(D)."* 9 C.F.R. § 205.203 (West 1999). (Emphasis added.)

To summarize this first point, the federal statute has been satisfied even though there may have been technical noncompliance with state law. The Effective Financing Statements complied fully with 7 U.S.C. § 1631(c)(4)(A)–(H). Since it is the federal law that provides the rule of decision when deciding whether an EFS is valid, compliance with federal law is all that is required. *Lisco State Bank,* 752 F.Supp. at 333–35 (as contrasted with state law, the provisions of 7 U.S.C. § 1631 determine the "adequacy and effect of the notice" to buyers).

I pause here to note that some of the corn was delivered to a Kansas elevator owned by United Grain. This fact does not defeat the plaintiffs' claim since it is the foreign buyer's responsibility to register with the Secretary of State where the crop is produced if, as in Nebraska, that state has a central filing system. *See* 7 U.S.C. § 1631(e)(2) (providing that the buyer takes subject to the security "in the case of a *farm product produced in a State* that has established a central filing system" and "the buyer has failed to register with the Secretary of State of *such State* . . . .)" (Emphasis added). *See also* Mark V. Bodine, *Clear Title,* 26 Washburn L.J. at 94–95 ("Unlike the U.C.C. financing statement, a filed EFS is good for five years even though the collateral has moved across state lines. This paradox requires the farm products buyer to inquire as to the origin of the product purchased. If the farm product was produced in a state with a [central filing system], the buyer must register with that system in order to receive notification of the security interest. If the buyer has failed to register, he takes subject to the security interest created by the seller of the farm product.") (footnotes omitted).

Second, even if the alleged noncompliance with Nebraska's county filing requirement was somehow an error under federal law, the statements substantially complied with federal and Nebraska law, the alleged error was harmless, and the supposed error must therefore be disregarded. The federal statute excuses errors when the EFS "substantially complies with the requirements of [7 U.S.C. § 1631(c)(4) ] even though it contains minor errors that are not seriously misleading." 7 U.S.C. § 1631(c)(4)(I). Nebraska's statute contained similar language. Neb.Rev.Stat. § 52–1307(9) (Reissue 1993) (An EFS means a statement that "[s]ubstantially complies with the requirements of this section even though it contains minor errors that are not seriously misleading."). In fact, Nebraska's law went even further: "The showing of an improper residence shall not affect the validity of the filing." Neb.Rev.Stat. § 52–1312(1) (Reissue 1993).

The affidavit of the operator of Nebraska's central filing system establishes that the plaintiffs' Effective Financing Statements, indisputably reported in Nebraska's master list, gave exactly the same type of notice as would have been the case if they had both been filed in the county of the debtors' residence as apparently required by Nebraska law. (Lemon Aff. ¶ 12.) Moreover, it is undisputed that the statements gave all the information required by 7 U.S.C. § 1631(c)(4) including a specification of the county where the corn was raised. 7 U.S.C. § 1631(c)(4)(D)(iv).

Stated differently, anyone viewing the master list would have seen a creditor's claim to corn grown in both counties. Therefore, the statements "substantially comply" with the statutory framework whether viewed under federal or Nebraska law. Since the failure to file the Thayer County EFS in Nuckolls County (or the failure to describe corn grown in Thayer County on the Nuckolls County EFS) was both "minor" and "not seriously misleading," the error, if it was a mistake, must be disregarded.

To the extent that United Grain argues that there was not "substantial compliance" because a buyer viewing the Nuc-

kolls County records would not have known of the EFS regarding the Thayer County corn, the argument is both misleading and irrelevant.[12] The pertinent Nebraska and federal statutes state that the central filing system, and not the county system, is the device that provides the notice. This is why United Grain was required to register with the Secretary of State and not a county clerk. It is undisputed that had United Grain registered with the central filing system it would have received notice of the security interest in the Thayer County corn no matter where the EFS was filed locally. United Grain's argument boils down to a meaningless truism, to wit: a corn buyer who looks in the wrong place will not find the right information.

In summary, the federal statute does not require filing in the county of the debtors's residence, and the Effective Financing Statements fully complied with all the requirements of 7 U.S.C. § 1631(c)(4)(A)–(H) when they were filed. Still further, even if there was an error, it is excused under 7 U.S.C. § 1631(c)(4)(I) and Neb.Rev.Stat. § 52–1307(9) (Reissue 1993). Moreover, it is undisputed that United Grain was not a "registrant" and, unless some other defense applies, it therefore took the corn subject to the plaintiffs' security interest.

### B.

**The Assignment from AG Services to AG Acceptance was Not "Material" within the Meaning of 7 U.S.C. § 1631(c)(4)(E)**

United Grain argues that the failure to amend the Effective Financing Statements to show an assignment from AG Services

to AG Acceptance within three months after the assignment was made voids the Effective Financing Statements.[13] United Grain is incorrect.

### The Undisputed Facts

The alleged conversion took place during the fall of 1996. On March 12, 1997, AG Services assigned the Kollings note and related security interest to AG Acceptance. AG Acceptance is wholly owned by AG Services and it has no employees of its own. In the agreement, AG Services promised to act as a "servicer" of the loans and it agreed to perform all functions for AG Acceptance respecting administration, servicing and collection of the debts. AG Services filed an assignment in favor of AG Acceptance on June 13, 1997, in Thayer County, and on June 16, 1997, AG Services filed a similar assignment with Nuckolls County.

### The Assignment was Not Material

United Grain argues that AG Acceptance became the holder of the note and security interest in March of 1997 but neither AG Services nor AG Acceptance amended the Effective Financing Statements in the hands of the Secretary of State to show that AG Acceptance was the secured party. Even if this is true, it is not significant.

First, the Effective Financing Statements were valid when filed and at the time of the alleged conversion. The Effective Financing Statements correctly showed the name and address of AG Services, the secured party, at the time of filing and at the time of the alleged conversion. See 7 U.S.C. § 1631(c)(4)(D)(i) (requiring the "name and address of the secured party").

---

**12.** As an aside, United Grain does not claim that it examined the local records.

**13.** To the extent that United Grain contends that the amended complaint fails to state a claim because AG Services does not presently own the note and security interest (because it was assigned to AG Acceptance) and, further, that AG Acceptance does not have a claim because AG Acceptance did not own the note and security interest at the time of the conver-

sion, I disagree. AG Services either owned the note and security interest or had a servicing obligation with regard to those documents at all material times. Therefore, AG Services was always a real party in interest either because it owned the note or because it had the obligation to collect the debt. AG Acceptance is also a real party in interest because it held the note and security interest as an owner at all times since becoming a plaintiff.

Secondly, since AG Services always retained the loan servicing and collection obligations for AG Acceptance, the transfer of ownership in March of 1997, after the alleged conversion had already taken place, was not a material change requiring a written amendment. *See* 7 U.S.C. § 1631(c)(4)(E) (requiring that an EFS "must be amended in writing, within 3 months, similarly signed and filed, *to reflect material changes* "). (Emphasis added.) *See also* Neb.Rev.Stat. § 52–1307(5) (Reissue 1993) (defining an Effective Financing Statement as one that "[s]hall be amended in writing, within three months, similarly signed and filed, *to reflect material changes.*") (Emphasis added.) After all, the alleged conversion had already taken place by the time the assignment was made. Thus, the defendant and third-party defendants could not have been misled by the failure of an EFS to show the assignment.

More importantly, had the Kollings or anyone else paid AG Services or secured a waiver from it, during the time when AG Acceptance owned the note and security interest, no one would have been harmed. AG Services could have accepted the payment, or given a waiver, on behalf of AG Acceptance.

The general counsel for both AG Services and AG Acceptance has sworn that: "As specified in the Purchase and Contribution Agreement ... [AG Services] operates as a 'servicer' to [AG Acceptance] on all such assigned accounts, and *performs all functions for [AG Acceptance] with respect to administration, servicing and collection of the assigned accounts.*" (Gibson Aff. ¶¶ 4 and 5 (second number paragraph 5).) (Emphasis added.) For all practical purposes AG Services and AG

Acceptance were one and the same. Therefore, there was no chance that anyone would deal with the wrong party.

In summary, the assignment was not a "material" change and no amendment of an EFS was required. Accordingly, the plaintiffs are entitled to summary judgment on this defense.

### C.

### United Grain May Not Assert the Defense of Implied Waiver

United Grain asserts that AG Services knew that the Kollings were selling their corn and impliedly waived any right to bring an action for conversion pursuant to 7 U.S.C. § 1631 because they allowed the Kollings to continue selling their corn. The facts surrounding the implied waiver are in dispute, but, as a matter of law, I conclude that United Grain's implied waiver argument is barred.

#### Nebraska Law Applies

Even though 7 U.S.C. § 1631 does not provide for it, the one case on the subject suggests that a defendant may assert an implied waiver if the law of the state where the conversion is alleged to have occurred recognizes such a defense. *See Mercantile Bank of Springfield v. Joplin Regional Stockyards, Inc.,* 870 F.Supp. 278, 282, 283–84 (W.D.Mo.1994) (in a conversion action brought pursuant to 7 U.S.C. § 1631 by bank against a stockyard, the court stated that "it becomes apparent the Federal Food Security Act does not pre-empt state common law regarding waiver"; the court held that the bank waived its security interest; applying Missouri law). The plaintiffs and United Grain [14] both urge me to use Nebraska law as the rule. At their urging, and based upon *Mercantile Bank of Springfield,* I do so next.[15]

---

**14.** For example United Grain "relies on other provisions of the Nebraska Uniform Commercial Code." (Br. of Def. and Third–Party Plt. United Grain in Op. to Plts' Mot. for Sum. Judg. at 26) (citing Neb.U.C.C. § 2–208 (1992).)

**15.** An argument could be made that one should look to the federal common law to decide whether an implied waiver defense may be asserted and, if so, under what circumstances. Since both parties rest their arguments on Nebraska law, and urge me to apply Nebraska law, I need not reach that question. However, had I reached that ques-

### No Implied Waiver May be Asserted by a Buyer Against a Security Interest Holder Who Has Filed an Effective Financing Statement

Although United Grain argues that Neb. U.C.C. § 2–208(3) (Reissue 1992) applies, I agree with the plaintiffs that Neb.U.C.C. § 9–306(2) (1998 Supp.) [16] is the governing law. This is because Neb.U.C.C. § 9–306(2) specifically deals with Effective Financing Statements and implied waivers under the federal act.

Neb.U.C.C. § 2–208(3) (Reissue 1992) states in pertinent part that a "course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance." Prior to 1994, the Nebraska Supreme Court construed Neb.U.C.C. § 2–208(3) to allow an implied waiver to be asserted in a case where the debtor sold hogs over a six-year period without first obtaining the consent of a bank which held a prior security interest in the hogs. *Farmers State Bank v. Farmland Foods*, 225 Neb. 1, 9, 402 N.W.2d 277, 282 (1987).

However, in 1994, the Nebraska legislature adopted the predecessor to Neb. U.C.C. § 9–306(2) (Supp.1998). In *Battle Creek State Bank v. Haake*, the Nebraska Supreme Court explicitly recognized that the law had changed since its opinion in *Farmers State Bank v. Farmland Foods*, and it quoted the 1994 amendment:

*Authorization to sell, exchange, or otherwise dispose of farm products shall not be implied or otherwise result, nor shall a security interest in farm products be considered to be waived, modified, released, or terminated, from any course of conduct, course of performance, or course of dealing between the parties or by any trade usage in any case in which: (a) The secured party*

*has filed an effective financing statement in accordance with the provisions of sections 52–1301 to 52–1321, Reissue Revised Statutes of Nebraska, 1943, or (b) the buyer of farm products has received notice from the secured party or the seller of farm products in accordance with the provisions of 7 U.S.C. § 1631(e)(1)(A), unless the buyer has secured a waiver or release of the security interest specified in such effective financing statement or notice from the secured party.*

*Battle Creek State Bank v. Haake*, 255 Neb. at 678–79, 678–79, 587 N.W.2d at 91 (summarizing history of implied waivers in Nebraska prior to the 1994 amendment and quoting Neb.U.C.C. § 9–306(2)) (italics in original).

The court, paraphrasing the words of the amendment, then recognized that the amendment was specifically intended to apply to Effective Financing Statements, the Food Security Act, and the relationship between buyers of farm products and holders of security interests in those products:

The second sentence of the April 19, 1994, amendments to § 9–306(2) provides, inter alia, that authorization to sell, exchange, or otherwise dispose of farm products shall not be implied or otherwise result from any course of conduct, course of performance, or course of dealing between the parties or by any trade usage, nor shall a waiver of a security interest be implied in any case in which: (1) The secured party has filed an effective financing statement in accordance with § 52–1301 et seq., or (2) the buyer of the farm products has received notice from the secured party or seller of the products in accordance with

tion, I would have decided that an implied waiver is precluded under federal common law when the conversion action is explicitly premised upon the buyer's failure to register with a central filing system. For the reasons stated in the text, Nebraska's "implied waiver bar" is the most consistent with the provisions 7 U.S.C. § 1631.

**16.** This statute, slightly modified, is now codified at Neb.U.C.C. § 9–315(2) (1999 Supp). The original version of the law, which in pertinent part has remained unchanged, became effective on April 19, 1994. *See Battle Creek State Bank v. Haake,* 255 Neb. 666, 678–79, 587 N.W.2d 83, 91 (1998) (describing history of statute).

7 U.S.C. § 1631(e)(1)(A), unless the buyer has secured a waiver or release of the security interest specified in the effective financing statement or notice received from the secured party.

As noted above, an effective financing statement created pursuant to § 52–1301 et seq. represents a separate statement in addition to the security interests referenced generally in the U.C.C. The effective financing statement statutory scheme arose as a result of the passage of the FSA. See Battle Creek State Bank v. Preusker, 253 Neb. 502, 571 N.W.2d 294 (1997). An effective financing statement pertains to rights between a seller of collateral in which a security interest has been asserted and a buyer of farm products in the ordinary course of business.

Id. 255 Neb. at 684, 587 N.W.2d at 94.[17]

■ As a result, I conclude that United Grain, as a corn buyer, cannot raise the implied waiver defense because valid Effective Financing Statements had been filed within the meaning of 7 U.S.C. § 1631 and the underlying Nebraska law. This conclusion follows because the statute unambiguously states that "a security interest in farm products" shall not be "considered to be waived" as a result of "any course of conduct, course of performance, or course of dealing between the parties" or "by any trade usage" if the "secured party has filed an effective financing statement." Neb.U.C.C. § 9–306(2) (Supp. 1998). Since the "implied waiver bar" language of Neb.U.C.C. § 9–306(2) is far more specific than the very general language of Neb.U.C.C. § 2–208(3) allowing consideration of course of performance evidence, the more precise statute is the one that must be enforced. See, e.g., Maack v. School Dist. of Lincoln, 241 Neb. 847, 858, 491 N.W.2d 341, 349 (1992) (to the extent that there is a conflict between two statutes on the same subject, the specific statute prevails over general statute to the extent of that conflict).

Furthermore, Nebraska's policy against implied waivers as between buyers and security interest holders who have filed an EFS is more consistent with the Food Security Act of 1985. Such a bar provides an incentive for buyers to register with the central filing system and then follow the federal statutory directive for avoiding liability. See 7 U.S.C. § 1631(e)(3)(B) (directing buyers who have received written notice of an EFS through the central filing system to obtain a release in order to avoid liability). The other approach—even though the buyer ignored the protection provided by the central filing system, a court must still decide whether the creditor impliedly waived his or her rights—injects uncertainty into the federal statute that was intended to provide clarity. Such uncertainty is to be avoided where, as here, Congress has striven to make interstate commerce in farm products subject to predictable rules regarding enforcement of security interests.

In sum, because the law which provides the rule for decision bars an "implied waiver" argument, United Grain is precluded from asserting that defense. The plaintiffs are therefore entitled to summary judgment on the implied waiver issue.

### D.

### The Statute of Limitations Does Not Bar the Plaintiffs' Claims

The defendant and the third-party defendants claim that the statute of limitations has run against the plaintiffs' claims. I disagree, and find that summary judgment should be granted to the plaintiffs on this issue.

#### What Law Applies?

The federal statute under which this case is brought provides no statute of limitations. See 7 U.S.C. § 1631. The parties assume that I must borrow and then apply a Nebraska statute of limitations. For

---

**17.** The court ultimately decided that the 1994 amendment did not bar Haake from raising the implied waiver defense because he was not a buyer within the meaning of the FSA. Id.

purposes of this case, but without deciding the issue, I assume that they are right and that I must look to Nebraska law for the most analogous statute of limitations for a cause of action predicated upon 7 U.S.C. § 1631. *See, e.g., Kansas Pub. Employees Retirement v. Reimer & Koger,* 61 F.3d 608, 611, *cert. denied,* 516 U.S. 1114, 116 S.Ct. 915, 133 L.Ed.2d 845 (1996) (stating that in "a federal question case, where there is no federal statute of limitations, the federal court will borrow the forum state's limitations laws, if not inconsistent with federal law or policy"). *But see Ackerman v. Northwest Airlines, Inc.,* 54 F.3d 1389, 1398–1400 (8th Cir.1995) (analogizing to another federal law, rather than a state law, in a suit brought under Employee Protection Program of the Airline Deregulation Act because the other federal law provided a closer analogy when compared with the state statute and that federal statute of limitations was more appropriate to the federal interest).[18]

## The Four Year Statute of Limitation Regarding Conversion Applies

■ In this case, I apply Neb.Rev.Stat. § 25–207 (Reissue 1995). As the title to that statute makes plain, it specifically pertains to an *"[a]ction for ... conversion." Id.* Specifically, the statute imposes a four year period of limitation upon "an action for taking ... personal property." *Id.* The plaintiffs' case is properly characterized as a conversion action. *See, e.g., Battle Creek State Bank v. Preusker,* 253 Neb. at 511, 571 N.W.2d at 300–01 (sale of "farm products" (milk proceeds); stating that "when property is subject to a security interest, the exercise of dominion or control over the property that is inconsistent with the rights of the secured party constitutes, as to that secured party, a conversion of the property"). Thus, it is

appropriate to "borrow" Neb.Rev.Stat. § 25–207 and apply it to this action for conversion under 7 U.S.C. § 1631.

I do not apply Neb.Rev.Stat. § 25–205(2) (Reissue 1995). That section covers suits for the recovery of the collateral itself. *Id.* ("An action to recover collateral ... [including] farm products ... shall be brought within eighteen months from the date possession and ownership of such collateral was transferred.") Here the plaintiffs do not seek to recover the collateral (corn), but, on the contrary, they seeks damages for conversion of the collateral.[19]

Therefore, Neb.Rev.Stat. § 25–207 is the right statute of limitations to apply since it describes suits that are identical to the action brought by the plaintiffs. Moreover, and compared to the 18 month statute of limitations for recovery of collateral, the four year statute of limitations found in section 25–207 is a better fit with the five year life of "Effective Financing Statements" specified under the federal law. *See* 7 U.S.C. § 1631(c)(4)(F) (an EFS is "effective for a period of 5 years from the date of filing....").

### Undisputed Facts and Conclusion

It is undisputed that the sale of the corn took place from September through December of 1996. It is also undisputed that this action was first commenced in March of 1998 and AG Acceptance was made a party plaintiff in March of 1999. Therefore, since the four year statute of limitations began to run no earlier than sometime in September of 1996, the statute of limitations had not expired when suit was commenced or when AG Acceptance became a party. Accordingly, the plaintiffs are entitled to summary judgment on this point.

---

**18.** An argument can be made that a uniform federal period of limitations should be fashioned by the court as opposed to "borrowing" a law from the forum. Nevertheless, since a decision on that issue is not critical to the resolution of this case and the parties urge me to apply Nebraska law, I do not reach that question.

**19.** It is unnecessary to reach the plaintiffs' alternate argument that even if Neb.Rev.Stat. § 205(2) (Reissue 1995) applies, this action is not barred. I therefore do not decide that question.

## E.

## Disputed Material Facts Preclude Summary Judgment on Other Issues

■ The parties argue that I should grant summary judgment on various other claims and defenses. Because material facts are genuinely in dispute about those issues, I will deny the motions as they regard those matters. These disputed factual issues include, but are not necessarily limited to, the following:

1. For each load, there is a dispute of fact about who actually owned the corn as between the Kollings, Holtzen and Gerdes.

2. There is a dispute of fact about whether United Grain knew, for each load, whether the corn belonged to the Kollings.[20]

3. There is a dispute of fact about whether the Kollings' note was paid in full.

4. As between the defendant and the third-party defendants, there is a dispute of fact as to whether United Grain, Holtzen and Gerdes intended to modify their contracts to substitute the Kollings' performance (corn) for the performance (corn) of Holtzen and Gerdes.

## III. Conclusion

For the reasons, previously stated, the plaintiffs' motion will be granted in part and denied in part and the other motions will be denied. Accordingly,

IT IS ORDERED that:

1. Except as stated in the following paragraph, the motions for summary judgment (filings 69, 73, and 75) are denied in all respects.

2. The plaintiffs' motion for summary judgment (filing 75) is granted in the following particulars:

(a) the failure to file an EFS in Nuckolls County, Nebraska describing corn grown in Thayer County, Nebraska is not a bar to the plaintiffs' claims regarding corn grown in Thayer County, Nebraska;

(b) the Effective Financing Statements relied upon by the plaintiffs were valid when filed;

(c) United Grain was not a "registrant" under Nebraska's central filing system and, unless some other defense applies, it took all the Kollings' corn subject to the plaintiffs' security interest;

(d) the assignment from AG Services to AG acceptance was not material and thus no amendment of the Effective Financing Statements was required;

(e) United Grain may not assert the defense of implied waiver; and

(f) the statute of limitations does not bar the plaintiffs' claims.

---

20. The parties seem to think that this is a "material" factual dispute, but I am not so sure. Anyway, I will leave this to the parties to address at trial since they have not adequately briefed the point.